ALAN J. KOEPKE *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF COVENTRY ET AL.
(8672)

HEIMAN, FREEDMAN and CRETELLA, Js.

Argued November 6, 1992—decision released February 23, 1993

396

*Mark K. Branse,* with whom was *Matthew J. Willis,* for the appellant (defendant Susan Oygard).

*Duncan J. Forsyth,* for the appellee (plaintiff).

*Abbot B. Schwebel,* for the named defendant.

CRETELLA, J. This case is before us on remand from the Supreme Court. We previously considered the matter in *Koepke* v. *Zoning Board of Appeals,* 25 Conn. App. 611, 595 A.2d 935 (1991), rev'd, 223 Conn. 171, 610 A.2d 1301 (1992), in which we affirmed the trial court's determination that the defendant Coventry zoning board of appeals lacked jurisdiction to consider an appeal by the defendant abutting property owner, Susan Oygard, with respect to the erection of a radio antenna on property owned by the plaintiff. We concluded that the notice of the public hearing on the issue before the board of appeals was inadequate and, thus, insufficient to confer jurisdiction on the board of appeals to act on Oygard's appeal. Id., 619. Because of our disposition of the notice issue, we did not reach Oygard's other claims. The Supreme Court granted certification and affirmed our determination with respect to the notice issue; *Koepke* v. *Zoning Board of Appeals,* 223 Conn. 171, 176, 610 A.2d 1301 (1992), but remanded the case to this court for consideration of whether Oygard's appeal to the board of appeals was timely. Id., 178. We conclude that the appeal to the board of appeals was not timely and therefore affirm the trial court's judgment that the board of appeals was without jurisdiction to hear her appeal.

The facts of this case are fully reported in our previous opinion; *Koepke* v. *Zoning Board of Appeals,* supra, 25 Conn. App. 611; but those facts necessary to the resolution of the issue presently before us may be summarized as follows. The plaintiff desires to build a 150 foot radio tower on property adjacent to property owned by Oygard. The plaintiff discussed the project

with the Coventry zoning officer and notice of the plaintiff's proposed construction was subsequently sent to Oygard, among others, on June 25, 1986. No objections to the proposal were received, and the plaintiff submitted an application for a zoning permit. The permit was granted on July 11, 1986. After the permit was issued, the Coventry zoning officer contacted the plaintiff and requested that he make a few minor alterations to the plans for the proposed tower and submit a new plan to the town. The plaintiff made the requested changes and submitted a new application, together with a revised plot plan, to the zoning officer. On August 7, 1986, the plaintiff, without payment of an additional fee, was issued a new permit bearing the same number as the previous permit. The plaintiff contemporaneously received a letter from the zoning officer stating that the July permit was revoked.

On August 12, 1986, Oygard appealed to the zoning board challenging the validity of the August 7, 1986 permit. After a public hearing, the board of appeals sustained Oygard's appeal, and the plaintiff appealed the board's decision to the trial court.

On remand, we are presented with the narrow issue of whether the trial court was correct in determining that Oygard's appeal to the board of appeals from actions by the Coventry zoning enforcement officer was timely taken. General Statutes § 8-7 provides in pertinent part: "An appeal may be taken to the zoning board of appeals by any person aggrieved or by an officer, department, board or bureau of any municipality aggrieved and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days . . . ." The board of appeals has not adopted a rule regarding the time in which to appeal and, thus, any appeal must be filed within thirty days pursuant to § 8-7.

Although Oygard agrees that the issue presently before us is limited, she raises three separate theories to support her claim that her appeal was timely. Her first contention is grounded in the language used by the Supreme Court in remanding the case. The Supreme Court stated that "[i]f Oygard's appeal did not comply with the thirty day provision of § 8-7, lateness *may* have deprived the board of subject matter jurisdiction to consider the merits of her appeal." (Emphasis added.) *Koepke* v. *Zoning Board of Appeals,* supra, 223 Conn. 178. Oygard contends that "[t]he Supreme Court, by using the word 'may,' is indicating that lateness alone might not deprive the Board of jurisdiction." We do not agree. Oygard argues that although § 8-7 uses the word "shall" in prescribing the time limit to appeal, this does not automatically create a mandatory duty. We conclude that the thirty day limit of § 8-7 is mandatory in nature and, thus, any appeal not taken within thirty days is invalid.

" 'In determining whether a statute is mandatory or merely directory, the most satisfactory and conclusive test is whether the prescribed mode of action is of the essence of the thing to be accomplished or, in other words, whether it relates to matter of substance or to matter of convenience.' " *Caron* v. *Inland Wetlands & Watercourses Commission,* 222 Conn. 269, 273, 610 A.2d 584 (1992). "Provisions relating to matters of substance are mandatory, whereas provisions designed to secure order, system and dispatch in the proceedings [are] generally held to be directory . . . ." (Internal quotation marks omitted.) *Caron* v. *Inland Wetlands & Watercourses Commission,* 25 Conn. App. 61, 66–67, 592 A.2d 964 (1991), aff'd, 222 Conn. 269, 610 A.2d 584 (1992). "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created. . . . Provi-

sions in statutes fixing a time within which to take an appeal are designed, in the public interest, to secure a speedy determination of the issue involved. . . . Time is not merely a procedural limitation but is an essential part of the remedy. . . . Such provisions are mandatory, and, if not complied with, render the appeal subject to abatement." (Citations omitted; internal quotation marks omitted.) *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 587, 418 A.2d 939 (1979). We conclude that the thirty day time limit is mandatory in nature. The thirty day time limit is analogous to a statute of limitation and, therefore, Oygard was required to pursue her appeal within thirty days or such right would lapse.

Oygard next asserts that even if the thirty day period to appeal is mandatory, the statute does not indicate from what event the thirty day period begins to run. She offers two different theories as to what event triggers the thirty day period, and concludes that under either theory her appeal was timely. Oygard's first theory is that the thirty day period did not commence from July 11, 1986, when the zoning enforcement officer issued the zoning permit, but rather from August 7, 1986, when a substitute permit was issued. Her second theory is that, notwithstanding the thirty day appeal period, the thirty days cannot commence to run until an aggrieved person has actual or constructive notice that a permit has been issued.

In its memorandum of decision, the trial court made the following determinations: (1) the circumstances that led to the August 7 permit did not constitute a revocation of the July 11 permit; (2) the alterations to the plot plan that gave rise to the August 7 permit were, at best, minor modifications that did not alter the purpose or the intent of the original permit; and (3) notwithstanding the zoning enforcement officer's attempt to revoke the original permit as evidenced by his letter to the

plaintiff of August 7, 1986, the zoning enforcement officer had no authority to revoke the original permit.

We will not disturb the factual findings of the trial court unless they are clearly erroneous. Practice Book § 4061; *Connecticut State Medical Society* v. *Commission on Hospitals & Health Care,* 223 Conn. 450, 458, 612 A.2d 1217 (1992). Additionally, "where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

We conclude that the trial court's determination that the thirty day period began to run from the issuance of the original permit on July 11, and not from the modification of that permit on August 7, is legally and logically correct and is amply supported by the facts in the record. The trial court, after examining the record, made certain findings of fact as to whether the August 7 permit constituted a new permit or a mere modification of the original permit, and we cannot find any basis in the record to suggest that this finding was clearly erroneous. On the basis of these factual determinations, we cannot say that the trial court's ultimate conclusion that the thirty day period began to run from July 11 is legally or logically incorrect. We therefore affirm the trial court's determination that the time to appeal began to run on the initial issuance of the permit on July 11, 1986.

Although we affirm the trial court's determination that the time to appeal began to run as of July 11, 1986, we briefly address Oygard's contention that the thirty day period did not commence until she received actual or constructive notice that a permit had been issued. While this argument has some superficial appeal, upon

further analysis, we must reject this claim also. We note that statutes specifically provide for the publication of notice for many of the various functions of zoning authorities such as the granting of a variance or special permit,[1] or approval of a subdivision,[2] among

[1] General Statutes § 8-3c (b) provides in pertinent part: "Whenever a commission grants or denies a special permit or special exception, it shall state upon its records the reason for its decision. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to the person who requested or applied for a special permit or special exception . . . . In any case in which such notice is not published within such fifteen-day period, the person who requested or applied for such special permit or special exception may provide for the publication of such notice within ten days thereafter. Such permit or exception shall become effective upon the filing of a copy thereof (1) in the office of the town, city or borough clerk . . . and (2) in the land records of the town in which the affected premises are located, in accordance with the provisions of section 8-3d."

Moreover, General Statutes § 8-3d provides in pertinent part: "No variance, special permit or special exception granted . . . shall be effective until a copy thereof, certified by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, containing a description of the premises to which it relates and specifying the nature of such variance, special permit, special exception or special exemption, including the zoning bylaw, ordinance or regulation which is varied in its application or to which a special exception or special exemption is granted, and stating the name of the owner of record, is recorded in the land records of the town in which such premises are located. . . ."

[2] General Statutes § 8-26 provides in pertinent part: "All plans for subdivisions and resubdivisions, including subdivisions and resubdivisions in existence but which were not submitted to the commission for required approval, whether or not shown on an existing map or plan or whether or not conveyances have been made of any of the property included in such subdivisions or resubdivisions, shall be submitted to the commission with an application in the form to be prescribed by it. . . . The commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith, including existing subdivisions or resubdivisions made in violation of this section, within the period of time permitted under section 8-26d. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to any person applying to the commission under this section . . . within fifteen days after such decision has been rendered. In any case in which such notice is not published within such fifteen-day period, the person who made such

others. The statutes do not provide for any form of notice to be given in connection with ministerial tasks such as the issuing of the permit at issue here. The approval of any type of plan by a zoning enforcement officer indicating that all of the pertinent zoning regulations have been complied with is a prerequisite to the obtaining of a building permit.[3] The plaintiff could not have obtained the building permit without first exhibiting to the building department some document to indicate that the proposed construction met the zoning requirements.

Oygard's application to the board of appeals alleged that the plaintiff should not be permitted to construct the subject radio antenna because the property is in a residential zone and the antenna would violate town height regulations. A reading of § 6.6 of the Coventry zoning regulations, however, supports the finding of the trial court that a radio antenna not occupying more than 10 percent of the ground area of the building is exempt from the height limitations of the regulations. Accordingly, the zoning permit was properly issued by the zoning enforcement officer, and, once issued, the thirty day appeal period began to run. While it is true that an aggrieved person has the right to take issue with the granting of a zoning permit, the legislature has not required that notice of the granting of a permit be given nor would it seem practical to give such notice for the literally thousands of such zoning and building permits that are issued on an almost daily basis across the state. We therefore conclude that Oygard's

application may provide for the publication of such notice within ten days thereafter. Such notice shall be a simple statement that such application was approved, modified and approved or disapproved, together with the date of such action. . . ."

[3] "A permit for the construction of a building granted by a municipal officer or board, which is required by statute or municipal ordinance of any person who proposes to erect a building within the limits of a municipality." Ballentine's Law Dictionary (3d Ed.).

time to appeal began to run at the time of the initial issuance of the permit; whether she received actual or constructive notice is irrelevant.

Finally, we note that Oygard did receive actual notice of the plaintiff's proposed construction by letter dated June 25, 1986. This letter invited neighborhood residents to submit comments and questions concerning the plaintiff's application for a permit to construct a radio tower. This notice was sent by the zoning officer, although there is no requirement that such notice be sent. Oygard claims, however, that this notice misled her into delaying the filing of her appeal until August 12, 1986. If, in fact, the notice did confuse Oygard or misguide her into failing to act in a timely fashion, her remedy, if any, would not lie against the plaintiff.

The judgment is affirmed.

In this opinion HEIMAN, J., concurred.

FREEDMAN, J., dissenting. Because I believe that Susan Oygard filed her appeal to the Coventry zoning board of appeals (board) in a timely manner, I respectfully dissent from the majority's conclusion that the board lacked jurisdiction to consider Oygard's appeal.

On August 12, 1986, Oygard appealed to the board from the August 7, 1986 decision of the zoning enforcement officer. This appeal was well within the thirty day time limit set forth in General Statutes § 8-7. Consequently, there is no question that the board had subject matter jurisdiction to consider the merits of the appeal.

Because the zoning officer revoked the permit issued on July 11, 1986, that permit cannot provide the relevant starting point for the statutory appeal period.

Once revoked, the permit no longer provided the legal authority by which the plaintiff undertook to construct the challenged radio tower.

The majority, however, agrees with the trial court's conclusion that Oygard's appeal was untimely because the thirty day period began to run at the time of the issuance of the permit on July 11, 1986. The trial court based its conclusion on its findings that "[t]he circumstances . . . that led to [the] plaintiff's filing a new application [on August 7] did not constitute a revocation of the July 11, 1986 permit" and "[t]he alterations to the [plot] plan [that gave rise to the August 7 permit] were, at best, minor modifications that did not alter the purpose and intent of the [original] permit," and its determination that the zoning enforcement officer had no authority to revoke the original permit. In my view, however, these findings and conclusions are neither supported by the record nor legally and logically correct. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

It is undisputed that on August 7, 1986, the zoning enforcement officer did, in fact, issue a decision revoking the permit issued on July 11. Because of the concerns of the zoning officer regarding the July 11 permit, the plaintiff filed a new application, which included a new plot plan. The plaintiff was then issued a new permit based on the plan in this new application.

The fact that the alterations to the plot plan that gave rise to the revocation of the original permit and the subsequent issuance of the August 7 permit may have been minor, in terms of the amount of work required, is not relevant. At the hearing before the board, the plaintiff explained that "my original permit was revoked for the reason that . . . there was some discrepancy in the size of the structure. . . . [The zoning enforcement officer] and I . . . looked at the site

drawings, and came up with a building structure, footing and foundation arrangement that would be in compliance with the zoning codes which I believe is [section] 6.6—this 10% rule. This caused an increase in usage of like 40 yards of concrete at a cost of about $2,000—*to bring my structure within compliance of the zoning regulations.*" (Emphasis added.) The zoning enforcement officer, likewise, explained that "[b]ecause [the plot plan submitted with the original application] had been modified [by the plaintiff] without zoning approval and was no longer in conformance with the zoning regulations, I revoked the permit." Although the zoning officer viewed the required modification as "minor," in terms of the amount of work required to be done in order to bring the plan into compliance with the Coventry zoning regulations, there is no doubt that the difference between the two permits centered on the issue of regulatory compliance. A subsequent application made in order to bring a prior application into compliance with applicable regulations, no matter how minor the work involved may be, is clearly not minor in regard to its significance and effect. Consequently, the record does not support the trial court's findings that the circumstances that led to the filing of a new application did not constitute a revocation of the July 11 permit, that the alterations to the plot plan that gave rise to the August 7 permit were, at best, minor modifications that did not alter the purpose or the intent of the original permit, and that therefore the thirty day period commenced on July 11, 1986. Those findings are, thus, clearly erroneous. Id.

In addition, whether the decision of the zoning enforcement officer to revoke the July 11 permit was correct and whether that decision was within the authority of the zoning officer were matters statutorily committed to the determination of the board upon appeal by the plaintiff. *Caserta* v. *Zoning Board of*

*Appeals,* 219 Conn. 352, 359, 593 A.2d 118 (1991); see General Statutes § 8-6. Such appeal not having been taken and such issue not having been submitted to the board for its decision in the context of the appellant's appeal, it was not for the trial court to make such a determination. See *Zachs* v. *Zoning Board of Appeals,* 218 Conn. 324, 328–29, 589 A.2d 351 (1991). Moreover, having submitted a new permit application and having obtained approval from the zoning enforcement officer for a new permit based on a different plot plan for the same property, the plaintiff waived irrevocably whatever benefit he may have derived from the zoning enforcement officer's earlier approval of the first permit application. *Gagnon* v. *Planning Commission,* 222 Conn. 294, 298–99, 608 A.2d 1181 (1992). Accordingly, the only point of reference for determining the timeliness of the appeal that finds support in the record, as it presently stands, is August 7, 1986.

Because I conclude that Oygard's appeal of August 12, 1986, from the August 7, 1986 decision of the zoning enforcement officer to grant a permit to the plaintiff was timely, I believe that the case should be remanded to the trial court with direction to remand the matter to the board to render a new decision after proper notice and hearing.