# FREDERICK J. LOULIS ET AL. *v.*
# DEAN B. PARROTT ET AL.
## (SC 15517)

Borden, Berdon, Katz, Palmer and Peters, Js.

Argued February 19—officially released May 20, 1997

*Robert A. Fuller*, with whom, on the brief, was *George W. Ganim, Sr.*, for the appellants (plaintiffs).

*Christopher J. Smith*, with whom were *Marci J. Silverman* and, on the brief, *Alice Ann Carey*, for the appellees (defendant Bart Center, Inc., et al.).

*Opinion*

BORDEN, J. This appeal presents issues regarding the applicability of the doctrine of exhaustion of administrative remedies to an action for an injunction against an alleged prospective zoning violation. The plaintiffs, Frederick J. Loulis and Margaret Loulis,[1] appeal, upon our grant of certification, from the judgment of the Appellate Court affirming the trial court's judgment of dismissal of their action on the ground that the plaintiffs had failed to exhaust their administrative remedies.[2] The plaintiffs sought an injunction against the defendants, Bart Center, Inc., and Vernon Bartosik and Dean B. Parrott,[3] barring the use of certain property as a package store in the town of Monroe. In their complaint, the plaintiffs alleged that the proposed use of the property would violate the Monroe zoning regulations. On appeal to this court, the plaintiffs claim that the doctrine of exhaustion of administrative remedies does not apply

[1] Initially, there were four additional plaintiffs in the action for an injunction, including Mary Riga, Seraphina Cascella, Robert Riga and Corrine Riga. Subsequently, these plaintiffs withdrew their claims.

[2] We granted certification to appeal limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the plaintiffs had failed to exhaust their administrative remedies?" *Loulis* v. *Parrott*, 239 Conn. 917, 682 A.2d 1003 (1996).

[3] Parrott has not participated in this appeal. We refer herein to Bart Center, Inc., and Vernon Bartosik as the defendants.

to the circumstances of this case and that the Appellate Court improperly affirmed the trial court's judgment of dismissal. We agree and reverse the judgment of the Appellate Court.

The facts and procedural history relevant to this appeal are undisputed. The plaintiffs initially brought an action by way of an application for a temporary and permanent injunction, and an order to show cause, dated February 13, 1995, and returnable on March 28, 1995. In their amended complaint, the factual allegations of which must be taken as true for the purpose of review of the judgment of dismissal; *Antinerella* v. *Rioux*, 229 Conn. 479, 489, 493, 642 A.2d 699 (1994); the plaintiffs alleged the following. The plaintiffs are residents and taxpayers of Monroe. Bart Center, Inc., owns the property in question, which is located at 600 Main Street, Monroe. The property is located in a design business No. 1 zoning district under the Monroe zoning regulations. There was a permitted package store on that property, encompassing 1200 square feet within a larger building and operated by a tenant. On February 11, 1979, the zoning regulations were amended to permit package stores in design business No. 2 zoning districts only. Any package store operating in a design business No. 1 zoning district as of that date was a nonconforming use. By virtue of this amendment of the zoning regulations, the package store at that location became a nonconforming use.

The plaintiffs' complaint further alleged that in February, 1980, the defendants entered into a new lease with the package store tenant under which the tenant relinquished occupancy of the original 1200 square feet and occupied 2380 square feet located in another part of the building. The defendants entered into this new lease without the town's zoning approval and without

obtaining a certificate of zoning compliance. The plaintiffs alleged that the relocation of the package store violated the zoning regulations because the operation of a package store in a different location was neither a permitted nor a nonconforming use. In their complaint, the plaintiffs further alleged that pursuant to the applicable zoning regulations, the right to a nonconforming use of the original 1200 square foot portion of the premises expired one year after the use had been abandoned.

In June, 1984, the plaintiffs, unaware of the ongoing zoning violations, leased the relocated package store from the defendants. Upon the expiration of the lease, the defendants evicted the plaintiffs from the property. Thereafter, the plaintiffs obtained approval from the state liquor control commission to move their package store permit to a new location at 630 Main Street, where they are presently operating a package store.

In 1987, the defendants enlarged the package store on the property from 2380 square feet to 3600 square feet, which included the original 1200 square feet. The enlargement itself was allegedly another violation of the zoning regulations because no certificate of zoning compliance had been obtained.

In May, 1994, the defendants leased the 3600 square foot package store to Parrott. The lease was conditioned on Parrott's obtaining a package store permit from the liquor control commission.[4] On May 4, 1994, Parrott, as required by General Statutes (Rev. to 1995)

[4] In 1994, the liquor control commission was a legislatively created agency that directed the department of liquor control in its enforcement of the liquor control act. Subsequently, in 1995, the responsibilities of the department of liquor control were transferred to the department of consumer protection. See Public Acts 1995, No. 95-195, §§ 13 and 83. The liquor control commission, however, continues to direct enforcement of the liquor control act.

§ 30-39,[5] requested certification from the town that the location of the proposed 3600 square foot package store complied with the Monroe zoning regulations. The town planning administrator certified Parrott's application

[5] General Statutes (Rev. to 1995) § 30-39 provides: "Applications for permits, renewals. Fees. Publication, remonstrance, hearing. (a) For the purposes of this section, the 'filing date' of an application means the date upon which the department, after approving the application for processing, mails or otherwise delivers to the applicant a placard containing such date.

"(b) (1) Any person desiring a liquor permit or a renewal of such a permit shall make a sworn application therefor to the department of liquor control upon forms to be furnished by the department, showing the name and address of the applicant and of his backer, if any, the location of the club or place of business which is to be operated under such permit and a financial statement setting forth all elements and details of any business transactions connected with the application. Such application shall include a detailed description of the type of live entertainment that is to be provided. A club or place of business shall be exempt from providing such detailed description if the club or place of business (A) was issued a liquor permit prior to October 1, 1993, and (B) has not altered the type of entertainment provided. The application shall also indicate any crimes of which the applicant or his backer may have been convicted. Applicants shall submit documents sufficient to establish that state and local building, fire and zoning requirements and local ordinances concerning hours and days of sale will be met, except that local building and zoning requirements and local ordinances concerning hours and days of sale shall not apply to any class of airport permit. The state fire marshal or his certified designee shall be responsible for approving compliance with the state fire code at Bradley International Airport. Any person desiring a permit provided for in section 30-33b shall file a copy of his license from the division of special revenue or the Gaming Policy Board with such application. The department may, at its discretion, conduct an investigation to determine whether a permit shall be issued to an applicant.

"(2) The applicant shall pay to the department a nonrefundable application fee, which fee shall be in addition to the fees prescribed in this chapter for the permit sought. An application fee shall not be charged for an application to renew a permit. The application fee shall be in the amount of ten dollars for the filing of each application for a permit by a charitable organization, including a nonprofit public television corporation, a nonprofit golf tournament permit, a temporary permit or a special club permit; and for all other permits in the amount of one hundred dollars for the filing of an initial application. Any permit issued shall be valid only for the purposes and activities described in the application.

"(3) The applicant, immediately after filing an application, shall give notice thereof, with the name and residence of the permittee, the type of permit applied for and the location of the place of business for which such permit is to be issued and the type of live entertainment to be provided, all in a form prescribed by the department, by publishing the same in a newspaper

(May, 1994 zoning certificate), which Parrott had submitted to the liquor control commission. The plaintiffs alleged that the May, 1994 zoning certificate was erroneously issued because: (1) the nonconforming use that

having a circulation in the town in which the place of business to be operated under such permit is to be located, at least once a week for two successive weeks, the first publication to be not more than seven days after the filing date of the application and the last publication not more than fourteen days after the filing date of the application. The applicant shall affix, and maintain in a legible condition upon the outer door of the building wherein such place of business is to be located and clearly visible from the public highway, the placard provided by the department, not later than the day following the receipt of the placard by the applicant. If such outer door of such premises is so far from the public highway that such placard is not clearly visible as provided, the department shall direct a suitable method to notify the public of such application. When an application is filed for any type of permit for a building that has not been constructed, such applicant shall erect and maintain in a legible condition a sign not less than six feet by four feet upon the site where such place of business is to be located, instead of such placard upon the outer door of the building. The sign shall set forth the type of permit applied for and the name of the proposed permittee, shall be clearly visible from the public highway and shall be so erected not later than the day following the receipt of the placard. Such applicant shall make a return to the department, under oath, of compliance with the foregoing requirements, in such form as the department may determine, but the department may require any additional proof of such compliance. Upon receipt of evidence of such compliance, the department may hold a hearing as to the suitability of the proposed location. The provisions of this subdivision shall not apply to applications for airline permits, charitable organization permits, temporary permits, special club permits, concession permits, military permits, railroad permits, boat permits, warehouse permits, brokers' permits, out-of-state shippers' permits for alcoholic liquor and out-of-state shippers' permits for beer, coliseum permits, coliseum concession permits, special sporting facility restaurant permits, special sporting facility employee recreational permits, special sporting facility guest permits, special sporting facility concession permits, special sporting facility bar permits and renewals.

"(4) In any case in which a permit has been issued to a partnership, if one or more of the partners dies or retires, the remaining partner or partners need not file a new application for the unexpired portion of the current permit, and no additional fee for such unexpired portion shall be required. Notice of any such change shall be given to the department and the permit shall be endorsed to show correct ownership. When any partnership changes by reason of the addition of one or more persons, a new application with new fees shall be required.

"(c) Any ten residents of the town within which is intended to be operated the business for which the permit or renewal thereof has been applied for, or, in the case of a manufacturer's or a wholesaler's permit, any ten residents

would have allowed part of the property to be used as a package store had been abandoned; (2) the remainder of the premises had never been approved for the sale of liquor; and (3) the location is within 1500 feet of another package store, namely, the plaintiffs' store, in violation of applicable zoning regulations.

The plaintiffs further alleged that, on January 12, 1995, the liquor control commission, relying on the erroneously issued May, 1994 zoning certificate, approved Parrott's package store permit. Although the plaintiffs appealed from the approval by the liquor control commission to the Superior Court, the plaintiffs alleged that Parrott could nonetheless commence business under the permit before the appeal is decided. Thus, in summary, the plaintiffs alleged that the town failed and refused to enforce its zoning regulations against the proposed illegal use of the property, and that unless the zoning regulations were enforced by way of an

of the state, may file with the department, within three weeks from the filing date of the application for an initial permit, and in the case of renewal of an existing permit, at least twenty-one days before the renewal date of such permit, a remonstrance containing any objection to the suitability of such applicant or proposed place of business. Upon the filing of such remonstrance, the department, upon written application, shall hold a hearing and shall give such notice as it deems reasonable of the time and place at least five days before such hearing is had. The decision of the department on such application shall be final with respect to the remonstrance.

"(d) No new permit shall be issued until the foregoing provisions of subsections (a) and (b) of this section have been complied with. Six months' or seasonal permits may be renewed, provided the renewal application and fee shall be filed at least twenty-one days before the reopening of the business, there is no change in the permittee, ownership or type of permit, and the permittee or backer did not receive a rebate of the permit fee with respect to the permit issued for the previous year.

"(e) The department may renew a permit that has expired if the applicant pays to the department a nonrefundable late fee of one hundred dollars, which fee shall be in addition to the fees prescribed in this chapter for the permit applied for. The provisions of this subsection shall not apply to one-day permits, to any permit which is the subject of administrative or court proceedings, or where otherwise provided by law."

injunction, the plaintiffs would suffer irreparable harm for which there is no adequate legal remedy.[6]

The defendants moved to dismiss the plaintiffs' injunction action on the ground, among others, that the plaintiffs failed to exhaust their administrative remedies. Specifically, the defendants pointed to the plaintiffs' failure to appeal, pursuant to General Statutes §§ 8-6 and 8-7,[7] to the Monroe zoning board of

---

[6] The plaintiffs also alleged that, as holders of a competing package store permit within 725 feet of another package store, they would suffer special damage and financial loss as a result of the use proposed by Parrott.

[7] General Statutes § 8-6 provides: "Powers and duties of board of appeals. (a) The zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter; (2) to hear and decide all matters including special exceptions and special exemptions under section 8-2g upon which it is required to pass by the specific terms of the zoning bylaw, ordinance or regulation; and (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed. No such board shall be required to hear any application for the same variance or substantially the same variance for a period of six months after a decision by the board or by a court on an earlier such application.

"(b) Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance. A variance shall not be extinguished solely because of the transfer of title to the property or the invalidity of any condition attached to the variance that would affect the transfer of the property from the person who initially applied for and received the variance."

General Statutes § 8-7 provides: "Appeals to board. Hearings. Effective date of exceptions or variances; filing requirements. The concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the

appeals (board) from the certification by the planning administrator that Parrott's proposed use of the property would be in compliance with zoning regulations. At the evidentiary portion of the hearing on the motion

enforcement of the zoning regulations or to decide in favor of the applicant any matter upon which it is required to pass under any bylaw, ordinance, rule or regulation or to vary the application of the zoning bylaw, ordinance, rule or regulation. An appeal may be taken to the zoning board of appeals by any person aggrieved or by any officer, department, board or bureau of any municipality aggrieved and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof. The officer from whom the appeal has been taken shall forthwith transmit to said board all the papers constituting the record upon which the action appealed from was taken. An appeal shall not stay any such order, requirement or decision which prohibits further construction or expansion of a use in violation of such zoning regulations except to such extent that the board grants a stay thereof. An appeal from any other order, requirement or decision shall stay all proceedings in the action appealed from unless the zoning commission or the officer from whom the appeal has been taken certifies to the zoning board of appeals after the notice of appeal has been filed that by reason of facts stated in the certificate a stay would cause imminent peril to life or property, in which case proceedings shall not be stayed, except by a restraining order which may be granted by a court of record on application, on notice to the zoning commission or the officer from whom the appeal has been taken and on due cause shown. Such board shall, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before such hearing. In addition to such notice, such board may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing. At such hearing any party may appear in person and may be represented by agent or by attorney. Such board may reverse or affirm wholly or partly or may modify any order, requirement or decision appealed from and shall make such order, requirement or decision as in its opinion should be made in the premises and shall have all the powers of the officer from whom the appeal has been taken but only in accordance with the provisions of this section. Whenever a zoning board of appeals grants or denies any special exception or variance in the zoning regulations applicable to any property or sustains or reverses wholly or partly any order, requirement or decision appealed from, it shall

to dismiss, held on May 15, 1995, it was established that while this action was pending Parrott had applied to the town zoning enforcement officer for a permanent certificate of zoning compliance in order to obtain a building permit. It was also established that on March 27, 1995, the zoning enforcement officer had issued Parrott a permanent certificate (March, 1995 zoning certificate), that on April 26, 1995, the plaintiffs had appealed from that action to the board, and that the appeal to the board was pending at the time of the May, 1995 hearing.[8] It was further established that in May, 1994, the then zoning enforcement officer had issued a certificate of zoning compliance regarding the property for purposes of certifying such compliance to the liquor control commission, and that with regard to both the May, 1994 and the March, 1995 certificates of zoning compliance, no notice by publication was required or made, and no actual notice was required or given to the plaintiffs.

state upon its records the reason for its decision and the zoning bylaw, ordinance or regulation which is varied in its application or to which an exception is granted and, when a variance is granted, describe specifically the exceptional difficulty or unusual hardship on which its decision is based. Notice of the decision of the board shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to any person who appeals to the board, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form, within fifteen days after such decision has been rendered. In any case in which such notice is not published within such fifteen-day period, the person who requested or applied for such special exception or variance or took such appeal may provide for the publication of such notice within ten days thereafter. Such exception or variance shall become effective upon the filing of a copy thereof (1) in the office of the town, city or borough clerk, as the case may be, but, in the case of a district, in the offices of both the district clerk and the town clerk of the town in which such district is located and (2) in the land records of the town in which the affected premises are located, in accordance with the provisions of section 8-3d."

[8] Although no notice of the March 27, 1995 action of the zoning enforcement officer had been given to the plaintiffs, they assert that they learned of the action while taking the defendants' deposition in this case. The defendants do not contest this assertion.

Thereafter, the defendants filed a supplemental motion to dismiss the injunction action, claiming that the plaintiffs' pending appeal to the board from the March, 1995 zoning certificate afforded them access to an administrative remedy that the plaintiffs had failed to exhaust. The trial court granted the defendants' motion to dismiss, finding that the plaintiffs failed to exhaust their administrative remedies, based on the pendency of the plaintiffs' April 26, 1995 appeal from the March 27, 1995 action of the zoning enforcement officer.

The plaintiffs appealed from the judgment of dismissal to the Appellate Court. The Appellate Court affirmed the judgment of dismissal, but on grounds different from those on which the trial court had relied. The Appellate Court held that the plaintiffs' failure to appeal, pursuant to §§ 8-6 and 8-7, to the board from the issuance of the May, 1994 zoning certificate constituted a failure to exhaust their administrative remedies. *Loulis* v. *Parrott*, 42 Conn. App. 272, 283, 679 A.2d 967 (1996). This certified appeal followed.

I

We first consider the reasoning of the Appellate Court, which is endorsed by the defendants, that the plaintiffs' failure to appeal to the board from the May, 1994 certification by the zoning enforcement officer deprived the trial court of subject matter jurisdiction over this injunction action, because such an appeal was an available administrative remedy that the plaintiffs had failed to exhaust. We disagree with the Appellate Court and the defendants.

There is no dispute that, as a general matter, the failure of a party to exhaust an available administrative remedy is a subject matter jurisdictional bar to a plenary action in court to test the same issue that the administra-

tive remedy was designed to test. *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 231, 662 A.2d 1179 (1995); *Country Lands, Inc.* v. *Swinnerton*, 151 Conn. 27, 33–34, 193 A.2d 483 (1963). The two part rationale for the exhaustion doctrine is: (1) to effectuate the legislative intent that the issue in question " 'be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment' "; *Simko* v. *Ervin*, 234 Conn. 498, 504, 661 A.2d 1018 (1995); and (2) to relieve " 'courts of the burden of prematurely deciding questions' " that may be resolved satisfactorily through the administrative process. Id.

It is also beyond dispute, however, that "[t]he right of appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue." (Internal quotation marks omitted.) *Keeney* v. *Old Saybrook*, 237 Conn. 135, 155–56, 676 A.2d 795 (1996). "Until the prospective appellant has either actual or constructive notice that a decision has been reached, the right of appeal is meaningless." (Internal quotation marks omitted.) *Bridgeport Bowl-O-Rama, Inc.* v. *Zoning Board of Appeals*, 195 Conn. 276, 281, 487 A.2d 559 (1985); *Hubbard* v. *Planning Commission*, 151 Conn. 269, 272, 196 A.2d 760 (1963). The Appellate Court's reasoning founders on this principle.

In the present case, the plaintiffs had no actual or constructive notice of the issuance of the May, 1994 zoning certificate to Parrott by the zoning enforcement officer, and there was no provision in the zoning regulations for such notice. For this reason alone, the plaintiffs

cannot be deemed to have failed to exhaust the administrative appellate process by which that issuance might have been challenged. The legislature could not possibly have intended that the plaintiffs be required to exhaust an administrative process of which they neither had notice nor even had any right to notice. We see no justification in our zoning statutes for inferring such an intent.

The defendants rely on *Astarita* v. *Liquor Control Commission*, 165 Conn. 185, 190, 332 A.2d 106 (1973), for the proposition that the plaintiffs' failure to appeal to the board constituted a failure to exhaust their administrative remedies. That reliance is misplaced. In *Astarita*, the local zoning enforcement officer denied the plaintiff's application for a certification that the local zoning regulations did not prohibit a grocery store beer permit at the plaintiff's grocery store premises. Id., 186–87. The plaintiff, instead of appealing that decision to the zoning board of appeals, as provided in the local zoning regulations and § 8-6, filed an application for a permit with the liquor control commission. Id., 187. The commission denied the plaintiff's application on the ground that it would be in violation of the local zoning regulations, and the plaintiff appealed from that decision to the trial court. Id. This court held that the plaintiff's failure, in those circumstances, to appeal from the zoning enforcement officer's decision to the zoning board of appeals constituted a failure to exhaust an available administrative remedy, depriving the trial court of subject matter jurisdiction over the plaintiff's subsequent administrative appeal. Id., 190.

*Astarita* does not support the defendants' position in the present case. The plaintiff in *Astarita* had full notice of the denial of his application by the zoning enforcement officer and, therefore, of the availability

of a timely appeal to the zoning board of appeals. Thus, it was wholly consistent with the rationale of the exhaustion doctrine to require the plaintiff to exhaust the administrative process that he had initiated. It would be wholly inconsistent with that rationale, however, to apply it to a third party to that process who had no notice of it.

The defendants also rely on the Appellate Court's decision in *Koepke* v. *Zoning Board of Appeals*, 30 Conn. App. 395, 620 A.2d 811 (1993), rev'd on other grounds, 230 Conn. 452, 645 A.2d 983 (1994), for the proposition that the plaintiffs' lack of notice of the issuance of the May, 1994 zoning certificate in the present case does not excuse their failure to appeal to the board from that certification. We agree that the Appellate Court has so held. In *Koepke*, the court stated: "While it is true that an aggrieved person has the right to take issue with the granting of a zoning permit, the legislature has not required that notice of the granting of a permit be given nor would it seem practical to give such notice for the literally thousands of such zoning and building permits that are issued on an almost daily basis across the state. We therefore conclude that [the abutting defendant's thirty day] time to appeal began to run at the time of the initial issuance of the permit; whether she received actual or constructive notice is irrelevant." Id., 402–403; see also *Bosley* v. *Zoning Board of Appeals*, 30 Conn. App. 797, 800, 622 A.2d 1020 (1993).

We disagree with that reasoning, however, and disavow it as a valid statement of the law. It is true that the legislature has not required notice to be given regarding an administrative action such as a zoning or building permit. That does not necessarily mean, however, that the legislature also intended to bar

aggrieved persons from the courts based on their failure to exhaust an administrative remedy when they seek to challenge the issuance of a permit of which they had no notice. Inferring such an intent would be contrary to the fundamental principle that, without notice that a decision has been reached, the right to appeal from that decision is meaningless. *Bridgeport Bowl-O-Rama, Inc.* v. *Zoning Board of Appeals*, supra, 195 Conn. 281. We will not infer legislative intent to dispense with such a fundamental principle in the absence of a clear indication of such an intent. Cf. *In re Daniel H.*, 237 Conn. 364, 376, 678 A.2d 462 (1996). There is no such indication in §§ 8-6 and 8-7.

Furthermore, the fact that many such permits may be issued does not mean that such a permit is free from subsequent challenge by a party who is aggrieved by it but was ignorant of, and not entitled to notice of, its issuance. The legal benefits of such a permit, however many are issued, do not include a fundamentally unfair immunity from challenge by a party who is so aggrieved. Indeed, it is only proper to allow such an aggrieved party to challenge the permit's validity in an appropriate judicial forum, given the lack of notice and consequent lack of meaningful opportunity to pursue an administrative appeal.

The defendants also claim that the plaintiffs' lack of notice of the issuance of the May, 1994 zoning certificate was cured by the notice that Parrott was required to give, pursuant to § 30-39 (b) (3), in connection with his subsequent application to the liquor control commission. See footnote 5 of this opinion. Thus, the defendants argue that, although the plaintiffs did not have actual notice of the zoning certification, "they had constructive notice of the certification of zoning compliance by virtue of the newspaper publication of the

notice of the application for the liquor permit, and the physical posting of notice at the site, required of the defendant Parrott." This argument is without merit.

Even if we were to assume without deciding that constructive, rather than actual, notice of the type provided by § 30-39 (b) (3) would be sufficient to satisfy the principle that the right to appeal must be preceded by adequate notice; *Keeney* v. *Old Saybrook*, supra, 237 Conn. 155–56; the notice provided for under § 30-39 (b) (3) is insufficient to invoke the doctrine of exhaustion of administrative remedies so as to bar the plaintiffs in the present case. First, that notice is given pursuant to a different statutory scheme from the zoning statutes. The plaintiffs' purported appeal rights, on which the defendants rely, arose, if at all, under § 8-7. See footnote 7 of this opinion. Under that statute, the appeal is to be taken "within thirty days" of the action appealed from. The record does not disclose that the constructive notice afforded by § 30-39 (b) (3), posted with regard to Parrott's application for a liquor permit, was given within thirty days of the granting of the certification of zoning compliance so as to afford the plaintiffs a realistic opportunity to appeal to the board under § 8-7. Second, the constructive notice afforded by § 30-39 (b) (3), by newspaper publication and by posting of a placard, extends only to the name and residence of the proposed permittee, the type of permit applied for, the location of the place of business, and the type of live entertainment to be provided. Thus, it does not, except by implication,[9] give constructive notice that the local zoning official has certified that the premises are approved for

---

[9] The implication would arise from the fact that, under § 30-39 (b) (1); see footnote 5 of this opinion; the application must establish that the local zoning regulations do not prohibit the liquor license that is the subject of the application. The notice required by § 30-39 (b) (3), however, does not include that information.

a liquor license under the local zoning regulations. Such an implication, drawn from a constructive notice to begin with, would have been insufficient to notify the plaintiffs of the May, 1994 zoning certificate by the zoning enforcement officer so as to invoke the exhaustion of administrative remedies doctrine.

II

Having concluded that the Appellate Court's reasoning was flawed, we turn to the defendants' proposed alternate ground on which to affirm that judgment. The defendants claim that the exhaustion of administrative remedies doctrine bars the plaintiffs from bringing this action because of the March and April, 1995 proceedings, in which the defendants, while this action was pending, had successfully applied to the zoning enforcement officer for a permanent certificate of compliance. The plaintiffs, upon learning of the March, 1995 zoning certificate, had appealed to the board from the zoning enforcement officer's grant of the certificate. The defendants assert that this action, which the plaintiffs had instituted before those administrative proceedings, "improperly preempted" the defendants' application for a permanent certificate of zoning compliance from the local zoning enforcement officer. Thus, the defendants contend that the plaintiffs "cannot avoid a required zoning procedure by prematurely filing a civil suit and requesting injunctive relief under the guise of a 'private zoning enforcement action' prior to [the defendants'] requesting necessary zoning or planning approvals."

In effect, then, the defendants claim that the exhaustion of administrative remedies doctrine prevents "improper" preemptive strikes: it precludes one party from bringing a civil action to challenge an alleged zoning violation by another party, where that *other* party will be required to undertake, but has not yet undertaken, administrative proceedings concerning the

conduct underlying the alleged violation, and it thus operates as an absolute shield against such an action. Under the defendants' view, if one party brings such an action, administrative proceedings subsequently initiated by the other party divest the trial court of subject matter jurisdiction over the action. We disagree with this application of the exhaustion doctrine in the circumstances of this case.

First, we have never applied the doctrine in such a manner, and the defendants cite no cases in support of such an application. Traditionally, the exhaustion of administrative remedies doctrine has been applied where the administrative proceedings were available to be invoked before the institution of the action, and the decision to invoke or forgo the administrative remedy at issue was within the control of the party against whom the doctrine was applied. See, e.g., *Simko* v. *Ervin*, supra, 234 Conn. 503 (plaintiff whose request for cease and desist order was denied barred from bringing subsequent injunction action because of failure to appeal from such denial to zoning board of appeals); *Greenwich* v. *Kristoff*, 180 Conn. 575, 578, 430 A.2d 1294 (1980) (defendant who had not appealed from cease and desist order against him barred, in subsequent zoning enforcement action by zoning enforcement officer, from raising defense of nonconforming use). In the present case, however, the defendants seek the application of the exhaustion doctrine where the administrative proceedings postdate the institution of the action and the decision to invoke or forgo the administrative process lay, not in the control of the plaintiffs, against whom the doctrine is sought to be applied, but in the control of the defendants, who seek to benefit from its application.

We see no sound reason to extend the exhaustion doctrine to this situation. It is one thing to require a

party, who has the power to invoke or forgo the administrative process, to invoke it before resorting to the courts. It is quite another to require a third party to refrain from invoking his or her right to proceed to court simply because a party has an administrative process available to him or her, over which the third party has no control and with regard to which that third party may or may not be an actual party.[10]

Furthermore, to the extent that the defendants seek to invoke the exhaustion doctrine based on the administrative proceedings that they initiated subsequent to the bringing of this action, their position must fail. In effect, the defendants argue that those subsequently initiated proceedings divested the court of its subject matter jurisdiction over this action. That argument is simply contrary to settled law. "As a general rule, jurisdiction once acquired is not lost or divested by subsequent events." *Bailey* v. *Mars*, 138 Conn. 593, 601, 87 A.2d 388 (1952); *State* v. *One 1976 Chevrolet Van*, 19 Conn. App. 195, 199, 562 A.2d 62 (1989).[11] Thus, just as the exhaustion doctrine does not bar the plaintiffs from bringing this action, the exhaustion doctrine does not serve to divest the court of its jurisdiction over the action itself.[12]

---

[10] Indeed, in this case the plaintiffs were not involved in or given notice of the defendants' March, 1995 application for a permanent zoning certificate, and only learned of it when they took the defendants' deposition in this case.

[11] An exception to this rule, however, is that subsequent events that render a case moot will result in a loss of subject matter jurisdiction. *Ayala* v. *Smith*, 236 Conn. 89, 93–94, 671 A.2d 345 (1996).

[12] The plaintiffs also contend that the exhaustion doctrine does not apply in this case because "[u]nder a long line of cases, neighbors and opponents *do not have to exhaust administrative remedies by appealing zoning permits* and certificates of compliance issued to the property owner, and can bring directly an injunction action for private zoning enforcement to eliminate a zoning violation." See, e.g., *Cummings* v. *Tripp*, 204 Conn. 67, 75, 527 A.2d 230 (1987); *Reynolds* v. *Soffer*, 183 Conn. 67, 69–72, 438 A.2d 1163 (1981); *Blum* v. *Lisbon Leasing Corp., Inc.*, 173 Conn. 175, 179–80, 377 A.2d 280 (1977); *Scoville* v. *Ronalter*, 162 Conn. 67, 74, 291 A.2d 222 (1971). The defendants contend, to the contrary, that the line of cases on which the plaintiffs rely has a narrower scope than the plaintiffs' formulation, and that

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for further proceedings according to law.

In this opinion the other justices concurred.

the "cases relied upon by [the] plaintiffs for this proposition are, in fact, cases of nuisance, or claims that the plaintiffs suffered special and peculiar injuries." The defendants contend, accordingly, that the plaintiffs' complaint does not fall within this line of cases.

We need not decide this issue in this appeal. The cases cited by the plaintiffs and sought to be distinguished by the defendants involved a determination by this court that the exhaustion doctrine did not bar the particular injunctive and other relief sought therein. We have decided in the present case that there was no administrative remedy that the plaintiffs were required to exhaust before bringing their complaint. Our task is therefore at an end. Whether the plaintiffs are entitled to injunctive relief on the allegations of their complaint and the proof adduced thereunder has never been addressed, either by the trial court or the Appellate Court, and is thus beyond the scope of this appeal.