[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Pursuant to General Statutes § 22a-43, the plaintiff, Daniel Kaminer, appeals from a decision of the defendant, Environmental Protection Board of the City of Stamford (EPB), acting in its capacity as an Inland Wetlands and Watercourses Agency, to grant a permit to conduct a "regulated activity" on a lot containing designated wetlands. Also named as defendants are William Morris, Chairman of the EPB, Thomas Keeney, Commissioner of the Department of Environmental Protection of the State of Connecticut, and Gordon Norris, the permittee.[1] The permit was issued to Norris to construct a single family home with driveway and septic system. In approving the application, the EPB acted pursuant to General Statutes § 22a-36, et seq.
On February 3, 1993, Gordon Norris, as contract purchaser of a lot on the north side of Wildwood Rd., Stamford, Conn., filed an application for a permit to construct a single-family home, a driveway, and septic system. (Return of Record (ROR), Item 5). The lot consists of 2.3 acres, with an isolated pocket of wetlands and an excavated pond which lies within the drinking water supply watershed of the Mianus River. (ROR, Item 15). The EPB considered this application on February 16, 1993, at which time it requested additional materials concerning the property; the applicant withdrew that application, and filed a second application on February 17, 1993. (ROR, Item 16). The EPB did not hold a public hearing. On June 13, 1993, the EPB approved the CT Page 13674 application with thirteen conditions. (ROR, Item 49). Notice of the decision was published in the Stamford Advocate on July 2, 1993. (ROR, Item 50).
Kaminer, an abutting landowner, appeals the decision of the EPB on the grounds that it acted illegally, arbitrarily and in abuse of its discretion in that the permit was in violation of notes on the subdivision map, the permit was issued without proper consideration of either environmental impact or viable alternatives, the EPB did not hold a public hearing, and the notices regarding the application were defective. Kraminer is the owner of the property located at 105 Wildwood Rd., which abuts the parcel that was the subject of the EPB's decision. (Amended complaint, ¶ 9). Accordingly, the court finds aggrievement pursuant to General Statutes § 22a-43.
"The broad legislative purpose of the wetlands act is set forth in General Statutes § 22a-36. That section states that the purpose of the act is to protect and preserve inland wetlands and watercourses by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology. . . . In our case law we have recognized that it is important to remember that against the laudable state policy of such legislation must be balanced the interests of the private landowner who wishes to make productive use of his wetland." (Citations omitted; internal quotation marks omitted.) Red Hill Coalition v.Conservation Commission, 212 Conn. 710, 718-19, 563 A.2d 1339
(1989).
Initially, Kaminer appeals on the ground that the public notices were inadequate, thus depriving the EPB of jurisdiction to act. He also argues that the private notice he received was inadequate to fully apprise him of the nature of the application or the identity of the property.
"Compliance with statutorily prescribed notice requirements is a prerequisite to a valid action by a land use commission and failure to give proper notice constitutes a jurisdictional defect." Peters v. Environmental Protection Board,25 Conn. App. 164, 168, 593 A.2d 975 (1991). The published notices are required by § 5.6 of the Stamford regulations, which requires the EPB to publish notices of all applications received and all decisions made, so that interested parties can review the plans and submit written comments. Notice CT Page 13675 was published on March 25, 1993, that an application had been received to construct a single-family dwelling, identifying the application as "Application No. 9309, Wildwood Rd. — Lot 1, Norris." (ROR, Item 33). This notice also stated that plans were available for public review and comment at the EPB office, the Town Clerk's office and the town libraries. A second notice was published on May 22, 1993, announcing that decision on the application had been deferred. (ROR, Item 45). A third notice, published on July 2, 1993, announced that the application had been approved with conditions. (ROR, Item 50).
Kaminer insists that the content of the notice should be judged according to Peters v. Environmental Protection Board, supra, 25 Conn. App. 164, which discusses the content of notices for public hearings. The EPB insists just as vigorously that the case law, including Peters, that involves notices for public hearings are inapplicable to the notices at issue in this case because there was no public hearing. "Adequate notice enables parties who have an interest in the subject property to know what is projected and to have an opportunity to protest." Id., 168. This standard, articulated in Peters, applies to all notice requirements, but its directive is broad. "The purpose of the statutory public prehearing notice is fairly and sufficiently to apprise the public of the proposed action, so as to enable intelligent preparation for participation in the hearing. . . . Although the notice may not be misleading, it need not be exact . . . and a public filing of the plan is relevant to the determination of the adequacy of the notice. . . . The purposes of the statutory postapproval publication are to give notice to interested parties of the decision and to commence the start of the appeal period." (Citations omitted.) R.B. Kent Sons. Inc.v. Planning Commission, 21 Conn. App. 370, 378, 573 A.2d 760
(1990). Notice, whether it be for a hearing or an application under consideration, must not be misleading, ambiguous, or overly vague. See Koepke v. Zoning Board of Appeals, 25 Conn. App. 611,595 A.2d 935 (1991), aff'd in part, 223 Conn. 171, 610 A.2d 1301
(1992), on remand, 30 Conn. App. 395, 620 A.2d 811 (1993), rev'd on other grounds, 230 Conn. 452, 645 A.2d 983 (1994) (notice was "excessively frugal" because it was "vague to the point of being misleading").
Kaminer relies too heavily on the perceived similarities between the notices in Peters and in this case, and not enough on the differences in the factual contexts. In Peters, the application at issue sought to develop a 4.75 acre parcel of land CT Page 13676 with a nursing home; the property at the time contained a single family home and was used as a working farm and produce market. In publishing a notice for a public hearing, the notice referred only to "Application #8843, Transcon Builders, Inc., for activities on Stillwater Road." The court found this notice inadequate for several reasons: only the street name was listed (which did not suffice to apprise as much of the populace as possible of the proposed construction), only the applicant, not the owner, was listed, and that applicant had considered an alternative site on the same street, which was publicly known because it had been a matter of public controversy.
The Peters case is also distinguishable from the present case with respect to the relationship between the content of the notice and the amount of information necessary to inform the public of the nature of the application. For example, in Peters
the use of the property was going to significantly change, requiring a special exception, and would be different from the uses of surrounding property; one could not tell from that notice that a piece of property currently used as a farm was going to be converted to a nursing home. It also created a potential confusion because alternative sites on the same street had been publicly considered which would also fit this description, and by not including the name of the current owner it was unclear, and potentially misleading, which piece of property on Stillwater Road was being referenced.
The notices published in the Stamford Advocate may have been skeletal in their description of the lot's location, but nothing about the description could be misleading in the context of a one-mile stretch of road already developed with numerous single-family homes. Any person interested in further development along Wildwood Rd., whether it was right next door or three houses down, would be adequately apprised by this notice to seek further information concerning the application. The notices referred to the maps and plans on file, where the EPB office was located, and that the public could review them during regular business hours. There was not the same problem of identification as the notice in Peters, which listed only the name of the street and the name of a construction company. That the applicant was not the record owner is not significant in the context of residential lots for which owners may change without notice to neighboring property owners.
Moreover, Kaminer received private notice that a lot CT Page 13677 adjoining his property was under consideration for development. Section 5.3 of the Stamford regulations requires that "[a]ny person submitting an application to the Board shall give written notification to abutting property owners of the nature of the application at least 3 days prior to the regularly scheduled meeting." Kaminer received this notice by registered mail on March 3, 1993 which indicated that he was an adjoining property owner, and that an application had been submitted by Gordon Norris, Contract Purchaser, to build a single-family home on Lot 1, on the north side of Wildwood Rd. (ROR, Item 24). He argues that this notice did not notify him of the nature of the application, the name of the actual owner, the time period within which he could comment, or that he could comment at all, or an adequate description of the lot. The letter said that he was being notified as an adjoining property owner, and that an application had been submitted to build a single-family home on a lot on the north side of Wildwood Rd. This was sufficient to notify him that the lot in question was adjoining his, on the north side of the street and would have a home built on it, and that if he had any questions he could address them to either the EPB or the developer. This is adequate information to inform him of the nature of the application, and to provide him with an opportunity to pursue any objections he might have to the proposed application.
Kaminer also appeals on the ground that the EPB acted improperly by not holding a public hearing. (Amended complaint, ¶ 11(c). He argues that the application was for an activity with a substantial impact on a regulated area, which requires a public hearing. Section 6.2 of the Stamford Inland Wetlands and Watercourses Regulations, based on General Statutes § 22a-32, requires a public hearing "[i]f the Board finds that the activity applied for does or may involve a significant or major effect on an inland wetland or watercourse." A public hearing is permitted, though not required, if the Board finds there is sufficient public interest in the proposed activity.
Section 2.29 of the Stamford regulations defines "significant impact" to include any activity involving the deposition or repositioning of material or the removal of any material that will have a substantial adverse effect on any regulated area. Simply placing fill on the property is not sufficient to constitute a significant impact; the effect of the fill must be substantially adverse. Rockville Fish Game Club, Inc. v. InlandWetlands Commission, 231 Conn. 451, 650 A.2d 545 (1994). In CT Page 13678Rockville, the court was considering similar municipal regulations for public hearings. The Tolland wetlands regulations required a public hearing whenever the application involved a significant activity, and similarly defined "significant activity" as one "which may have a substantial effect on the area for which an application has been filed." Id., 456. The court, emphasizing the requirement that the activity have a substantial effect on wetlands, concluded that "[a]n activity that may affect wetlands, therefore, is not a `significant activity' within the meaning of the Tolland wetlands regulations unless its potential effect on the wetlands is a substantial one." Id., 457. See alsoKeiser v. Conservation Commission, supra, 41 Conn. App. 39
(public hearing required only when impact is deemed by the commission to be substantial under the Redding regulations).
Kaminer points to the fact that the EPB postponed its decision until more information could be acquired concerning the restriction against fill on the subdivision map. This restriction, and the EPB's acknowledgement of it, signifies to Kaminer that the EPB recognized the significant impact this application would have and proceeded anyway without a public hearing. The EPB's questioning of the condition has no relevance to its assessment of the significance of the impact, and its investigation allayed any concerns that the subdivision map may have raised. After the question of the subdivision condition was resolved to their satisfaction, the EPB's staff concluded that because of the mitigating features of the design and the conditions placed on the permit, "it is not anticipated that the project will result in an irretrievable loss of resources, lessen long term productivity or result in a significant environmental impact or significant reduction of the functions and values of the regulated areas." (ROR, Item 47, p. 12).
The EPB had sufficient evidence to determine that the application did not involve an activity that would have a major adverse effect on the regulated area.
The next ground raised by Kaminer is that the granting of the permit was "in contravention of map notes and other conditions of subdivision which were imposed upon the subject premises by the City of Stamford Planning Board in 1976." (Amended complaint, ¶ 11(b). Note 6 of the subdivision map reads: "no fill shall be placed within 25' of the brook or pond and no structure shall be erected within 50' of the brook or pond shown on Lots 1, 2, and 3." (ROR, Item 15, p. 1). The EPB was concerned that the CT Page 13679 application was inconsistent with this restriction and would not consider the application until the applicant submitted correspondence from the Planning Board that the restriction had been amended or that the restriction did not apply to the development as proposed. (ROR, Item 21).
The purpose of this restriction was to prevent the placement of any building so close to the pond or brook that it would be flooded. (ROR, Item 3.) The history of the debate over the meaning of Note 6 supports the conclusion that the EPB could have reasonably concluded that the plan was not inconsistent with this restriction. It was the opinion of the applicant's engineer, based on early correspondence from the Planning Board; (ROR, Item 3); that construction of the driveway would not violate this condition if it was shown that it would not restrict runoff. (ROR, Item 19). The EPB said that such a conclusion had to come from the Planning Board itself; (ROR, Item 21); and asked the Board to address the question; (ROR, Item 22); postponing any further action on the application until the Board discussed it. (ROR, Item 29). The Engineering Bureau reported to the Planning Board that the plans were feasible in regard to the proposed drainage of the area; (ROR, Item 37); after which the Board sent a letter to the EPB saying that "there is nothing in the Planning Board's approval of Subdivision #2785 which would prohibit the present applicant from obtaining a building permit." (ROR, Item 38). In other words, it was not a matter of revising the condition, but finding that the plan was consistent with the purpose of the condition.
The record supports the EPB's determination that the plan was consistent with the condition.
The final grounds raised by Kaminer are that the EPB did not adequately consider the environmental impact or other factors statutorily required under General Statutes § 22a-41 (a) (3) — (6). The Agenda Summary Report of June 14, 1993, prepared by the town's Environmental Planner, documents the EPB's decision and provides details of the EPB's findings, including the potential impacts of the plan, the major issues considered by the EPB and how each one was resolved. (ROR, Item 47). One concern was septic feasibility, which was alleviated when the Health Department reported that the septic design was in accordance with the State Health Code. (ROR, Item 43). The EPB also considered the potential impacts on drainage and adjoining properties; (ROR, Item 47, pp. 9-10); for which Norris submitted plans and CT Page 13680 correspondence to the effect that the conveyance of the brook would not be diminished, conclusions confirmed by the city's Engineering Department. (ROR, Item 37). Norris also submitted an erosion control plan, which included a natural buffer of 50 feet surrounding the wetlands, which satisfied the EPB as an appropriate measure to preserve water quality. (ROR, Item 47, p. 10). The plan also included numerous measures to mitigate the anticipated loss of wetlands and drainageways, including a conservation easement of 1.51 acres, the posting of conservation signs, and a landscaping plan which was modified according to the EPB's direction. (ROR, Item 47, p. 10). The EPB concluded that the proposed easement would protect numerous trees and "supply natural filter strip to wetland to limit the negative influences of increased runoff, sedimentation, biochemical degradation and thermal pollution," and was adequate according to standards published by the Department of Environmental Protection, noting also that it closely mimics the one on the Kaminer property. (ROR, Item 47, p. 12).
The final permit contained thirteen conditions, including the conservation easement, additional drainage details to enhance silt trapping abilities of the catch basins, sediment and erosion controls, conservation signs, stabilization of disturbed areas prior to occupancy, and prohibition of in-ground fuel storage. (ROR, Item 51).
The EPB also considered alternatives to the plan, such as relocating the dwelling, zoning variances to change setbacks, smaller dwelling and septic, or restricting building altogether. (ROR, Item 47, p. 12). Recognizing that all but .126 acres of the property is regulated wetlands and that some encroachment is necessary if the land is to be developed at all, it concluded that these alternatives were excessive since the developer and the EPB were able to agree on a plan that had minimal impact and numerous mitigations. (ROR, Item 47, p. 12).
"The plaintiff shoulders the burden of proof when challenging a decision of an administrative agency. . . . A showing by the plaintiff that another decision maker might have reached a different conclusion does not satisfy this burden. . . . Instead, the plaintiff must establish that substantial evidence does not exist in the record to support the agency's decision. . . .
The record, particularly the EPB's Summary Report; (ROR, Item 47); reveals a thorough consideration of the environmental impact CT Page 13681 of the plan, the feasibility of alternatives, and mitigating conditions. The plan was altered in response to the EPB's concerns, especially regarding landscaping and drainage, and the EPB considered the permit with its conditions an appropriate compromise that would allow the lot to be reasonably developed so as to minimize the impact on the regulated areas.
The notices, both public and private, were adequate and Kaminer had ample opportunity to comment on the merits of the application. The plaintiff has not sustained his burden of proving that the EPB acted illegally, arbitrarily or in abuse of its discretion when it granted the permit to Norris and accordingly, the the appeal is dismissed.
DEAN, J.