[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case was originally filed on February 17, 1998, and in addition to the plaintiff, Lawrence P. McDonnell, there were five additional plaintiffs, all of whom claimed to be abutting property owners to the defendant, Paul Falco. The original defendants in the case in addition to Paul Falco were Mario Garofalo, the Zoning Enforcement Officer of the Town of Easton, and William Kupinse, the First Selectman of the Town of Easton. At some subsequent time, the plaintiffs withdrew their case against Garofalo and Kupinse. At the time of trial only Lawrence P. McDonnell appeared and testified, and the court granted the defendant's motion to dismiss as to all plaintiffs other than Mr. McDonnell.
Only two witnesses testified, Mr. McDonnell and Mr. Falco. Mr. McDonnell has lived with his wife on a three acre parcel of land located at 92 Burroughs Road in Easton since 1970. The defendant Falco bought his property comprising 7.1 acres at 75 Barrow's Road in Easton about the same time. Falco began conducting a firewood and mulch business on the property approximately 25 years ago. The plaintiff describes the problems associated with that business as having begun 15-16 years ago. The Falco and McDonnell parcels abut each other along a portion of their rear property lines. Both parcels are in a residential zone.
Mr. McDonnell testified that the activities he now complains of began about 15 years ago and that the activity and problems have increased. His basic claims are that the defendant's business activities cause excessive noise and noxious fumes from the heavy equipment used; to wit, trucks, payloaders, chain saws, chippers and a wood grinding machine that processes the wood to mulch. He further described the hours of the operation of the business. He claims that these activities are in violation of the Easton Zoning Regulations and have diminished the value of his property as well as causing him emotional distress, loss of sleep and appetite, headaches and nausea. He admits that he had complained once earlier in the 1980's, but did not pursue the complaint. In September of 1997 he and the other original plaintiffs sought the services of Attorney Hanon Russell who, on September 29, 1997, wrote a letter to Mario Garofalo, the Easton CT Page 13542 Zoning Enforcement Officer, (defendant's exhibit 1) complaining about Mr. Falco's commercial activity. (All trial exhibits bear the date September 22, 1999.)
Mr. Falco testified and described his business operation. He claims that his mulching operation is conducted about 25 days a year on his property and that he sells the mulch to customers who call him and he delivers the product in one of his trucks. As far as the firewood business, he sells about 150 cords a year which he sells and delivers himself. He operates this business by himself unless he is getting some help from his daughter. He says it takes about one hour to split a cord of wood although he can do two cords an hour with his daughter's assistance. He described the equipment used by him as chain saws, a log splitter, a mulch grinding machine, a log truck and two payloaders. He admits that 80% of the logs that he splits for firewood or grinds into mulch are brought to his property from outside sources. He demonstrated on defendant's exhibit 5 where the various commercial activities take place on his property and estimates the location of his mulch grinding operation to be 800-1000 feet from the plaintiff's property line.
On September 23, 1996, the defendant filed with the Easton Tax Assessor an Application for Classification of Land as Farm Land for a portion of his land comprising the four acres on which the commercial venture exists. That application was approved on October 31, 1996. (See defendant's exhibit 6.) There was no evidence presented as to what information, if any, other than the application was provided to the assessor about the activity or what type of investigation, if any, was conducted by the Tax Assessor. This court has no way of knowing whether or not the assessor was aware that 80% of the raw logs used for the cord wood and mulch came from off premises. That pretty well describes the situation up to the letter of September 29, 1997.
What took place from that date is both curious and confusing. Attorney Russell's letter to the Zoning Enforcement Officer (hereinafter "ZEO") seems to be the place to start. That letter was date stamped by the Easton Planning and Zoning Commission (hereinafter "Easton P Z") on October 1, 1997. In that letter, counsel describes the nature of the claimed zoning violations and asked for an immediate cease and desist order to issue. There does not appear to have been any follow-up to that request, and it appears clear that Mr. Garofalo did not render a decision, one way or the other, to either issue the cease and desist order or CT Page 13543 refuse to issue it. The defendant in his trial memorandum states that the ZEO inspected the defendant's property, found him compliant with all regulations and statutes and found the noise complained of to have come from other construction in the area. No proof was ever offered in support of those claimed facts other than defendant's exhibit 8, a letter from the Easton P Z to the defendant dated April 2, 1998, memoralizing their decision of October 27, 1997, concerning the defendant's activities. In the third paragraph of that letter reference is made to "facts determined by an inspection by the Easton Zoning Enforcement Officer", which facts remain undisclosed as of this date. Mr. Garofalo was never called by the defendant as a witness.
Reference is now made to the Easton Zoning Regulations Section 9.3.3 Zoning Enforcement Officer (see defendant's exhibit 4) which states: "The Commission shall appoint a Zoning Enforcement Officer who shall be responsible to the Commission and act as its representative in the performance of such inspection duties in connection with the enforcement of these regulations as may be assigned to said Officer by the Commission." Thus the Easton P Z is directly in charge of the duties of this officer. In Section 9.3.2 Commission Responsibility it states further:
 "The Commission is hereby designated as the official authority which shall be authorized to cause any building, structure, place or premises to be inspected and examined and to order, in writing, the remedying of any condition found to exist therein or thereon in violation, of any provision of these Regulations, or to take such other action as shall be necessary and proper to enforce these Regulations as provided by law. Any such remedial action shall be accomplished by the violator within 10 days of the date of such order."
Thus, by the terms of § 9.3.2 and § 9.3.3, the ZEO inspects but Easton P Z makes the determination of whether the use complained of violates the Zoning Regulations. This is contrasted to the more common situation where the ZEO makes the decision and that decision may be appealed to the Zoning Board of Appeals. The process adopted herein is for the Commission to initially decide the enforcement matter and then, pursuant to Connecticut General Statutes § 8-6, allow for an appeal of that decision to the Zoning Board of Appeals pursuant to Section 9.4.1 of the Zoning Regulations. See Conto v. Zoning Commission,
CT Page 13544186 Conn. 106 (1982), which authorized an appeal to the Zoning Board of Appeals from an action of the Zoning Commission if by local regulation that commission was charged with the enforcement of the local zoning regulations.
It would appear, however, that Mr. Garofalo, before or after he did whatever he did, referred Attorney Russell's letter to the Easton P Z and it apparently had a discussion of it at its meeting of October 6, 1997, at which the defendant appeared and spoke, but neither the plaintiff nor his attorney were ever notified of the meeting even though it was their letter which prompted the meeting. Obviously, neither the plaintiff or his attorney appeared. There was no evidence that this meeting was ever noticed or ever showed up on an agenda. The matter was apparently continued until the Commission's meeting of October 27, 1997.
The agenda for the October 27 meeting of the Commission was filed with the Town Clerk on October 23, 1997, and under "Old Business", the Falco matter was noticed. (See defendant's exhibit 3a.) This was not noticed as a public hearing matter. Quite obviously no notice was given to the plaintiff or Attorney Russell of the October 27 meeting. The defendant again appeared and spoke but no transcript was ever offered to indicate what he or anyone else said or whether the commission even knew that he was bringing in 80 percent of his wood from off premises. Obviously, neither the plaintiff or his attorney appeared.
The minutes of the October 27, 1997, meeting of the Easton P Z as it relates to Paul Falco (see defendant's exhibit 2) reads as follows:
 "2. Paul Falco, 75 Barrows Road — This is a continuation of a Complaint that was addressed at the Planning and Zoning Meeting of October 6, 1997. Paul Falco addressed the Commission and stated that the use of his property as (sic) been deemed agricultural by the Farm Bureau and has received a Section 490 Tax status. The Commission made the following findings:
 1. The property at 75 Barrows Road is an agricultural use, governed by Connecticut General Statute Section 19A-341. CT Page 13545
 2. The property is being used for a home service, the cutting of cord wood and agricultural mulch. The sale of cord wood has been going on since Colonial Times.
 3. Operation has been conducted on the property for almost 27 years.
 4. There are no outside employees and business is being carried on by the resident occupant.
 5. The operation that is being conducted is a normal operation with normal equipment use.
 6. Complaints as to noise may have arisen from nearby properties because of present construction being conducted in the area of the Falco property.
 7. There are written documents from the Farm Bureau which classify the property under a Section 490 Tax status. This is supported by records in the Assessor's Office.
 8. For taxation purposes, Falco files a Schedule F, not a Schedule C on the property.
 Motion was made by Bob Maquat to approve the findings by the Commission. It was seconded by James Mellen. Vote unanimous, motion carried. Letters to be written by Bob Albrecht to the Attorney and to Mr. Falco."
No letter to the attorney was ever written as far as the evidence is concerned. No publication of this decision was ever made in a newspaper or to the plaintiff or Attorney Russell. In fact, the defendant was not advised of it in writing until April 2, 1998, after this suit was initiated. CT Page 13546
What happened next and when is hard to follow. The plaintiff testified that he eventually learned of the Commission's October 27 decision from Attorney Russell, but he does not know when. The plaintiff wrote a letter to Selectman candidate William Kupinse on October 30, 1997, making similar complaints, and he is sure he was not aware of the decision as of that date.
The last curious fact in this case is that the Easton P Z, by letter dated April 2, 1998, wrote the defendant and his wife advising them of their decision of October 27, 1997, all without explanation, but more than five months after their decision was rendered and almost two months after this case was initiated by the plaintiff. On this state of facts, the court is asked to determine the rather complex and unusual circumstances of this case.
The operative complaint in this case is dated October 28, 1998, and in that the case was withdrawn as to all defendants other than Mr. Falco, only the first count is at issue. Although that amended complaint does not have as part of it a claim for relief, the court will further amend the complaint by adding the appropriate claims for relief from the original complaint as follows:
"1. Money damages in excess of $15,000.00;
2. Statutory interest;
 3. A temporary and permanent injunction restraining the defendant from committing or conducting any further activities in violation of the Easton zoning laws."
The heart of the plaintiff's claim is set forth in paragraph 6 wherein it is alleged that for the past several years the defendant has been engaging in commercial activities on his property; to wit, clearing of trees, logging operations, the operation of commercial wood-chipping machinery and related commercial activity, all of which activities it is claimed are illegal pursuant to Sections 2.1.19, 2.1.24, 2.1.32, 4.2.3 and 4.2.3(A)(B)(C) and (D) of the Easton Zoning Regulations. Paragraph 9 of the Amended Complaint describes the damages to the plaintiff flowing from these violations.
The defendant filed its answer denying all of the allegations CT Page 13547 of paragraphs 6 and 9 of the Amended Complaint. The defendant has filed two Special Defenses which have been denied and which will be discussed later.
Both parties filed Motions for Summary Judgment with supporting memoranda, which were never heard but which the court agreed it would consider in determining the issues in this case so that all the arguments would not have to be restated. The court allowed for additional briefing of any matters that counsel wished to add to that which was previously presented and each has filed an additional memorandum. Although the court will review the briefs filed in support of these motions, its decision will be based on the evidence presented at the trial.
The position of the plaintiff is quite clear. He claims that the defendant's present commercial activity wherein he brings onto his premises from off premises 80% of the raw logs used for the firewood and mulch processing violates the zoning regulations because these activities do not fit the definition of farming under the regulations, but in fact constitutes illegal commercial activities not authorized by a special permit or variance granted by the Easton P Z or the Zoning Board of Appeals. In reviewing the sections of the zoning regulations claimed to have been violated in paragraph 6 of the Amended Complaint, the court observes an error. A violation of section 2.1.19 is alleged. That is a definition of Medical Office Building whereas 2.1.9 is the definition of a farm. The court on its own will amend paragraph 6 of the Amended Complaint to now reflect a violation of section 2.1.9 as it is obvious that is what everyone is talking about.
The defendant's position is equally clear. He claims that his commercial activities are part of a farm use and, therefore, are permitted within the residential district. The court will deal with that issue later because this is the crux of this case. The court will first deal with the other claims mentioned by the defendant in his various briefs.
The defendant first argues that the Easton P Z found on October 27, 1997 that he was not in violation of the zoning regulations and courts should not overturn those findings unless the Easton P Z acted illegally or in abuse of its discretion. That clearly is the law in an appeal to court from the doings of a planning and zoning commission. This is not an appeal from the Easton P Z because no notice of its decision was provided. The defendant also argues that the plaintiff has failed to exhaust CT Page 13548 his administrative remedy by filing an appeal from either the Easton P Z's decision or the decision of the ZEO.
As has been previously stated, Easton P Z, by its own regulation, has taken it upon itself the function of enforcing the zoning regulations. The plaintiff's letter complaint from his lawyer to Mr. Garofalo, the ZEO, went to the Commission on October 1, 1997. It is unclear what Mr. Garofalo did. He did not testify nor did anyone from the Commission testify. Despite the claims in the defendant's brief to the contrary, there is no evidence as to what, if anything, he did, but it is absolutely clear he did not render or communicate a decision from which an appeal could be taken.
What did happen? Once the Commission got the letter, it discussed the complaint at its October 6, 1997, meeting. No notice of any kind was given to the plaintiff or his attorney of that meeting so obviously they did not appear, despite the fact it was their complaint that generated the meeting. The defendant Falco did appear and speak, but this court has no idea what was discussed because no transcript of that meeting was presented as an exhibit. Apparently, no official action was taken and the matter was apparently continued. The next thing that happened was on October 23, 1997, when the Commission filed its agenda with the Town Clerk for its October 27th meeting and listed the name of the defendant. The defendant again appeared at that meeting. No notice of any kind was published or sent to either the plaintiff or his counsel of the meeting and obviously they did not appear.
The Commission rendered a decision at that meeting. (See defendant's exhibit 3.) Again, no notice of that decision was ever published or in any way communicated to the plaintiff or his attorney. In fact, the first formal notification of any action of the Commission on this matter was a letter from the Commission to the Falco's on April 2, 1998, after this case was filed.
The defendant's argument that the plaintiff failed to exhaust his administrative remedies is ludicrous. If the Commission had notified the plaintiff or his attorney of its decision, they would have had 30 days to appeal to the Zoning Board of Appeals. With no notice of a decision, there was hardly anything to appeal from. Despite the defendant's claim in its trial memorandum that "the plaintiff could have brought an appeal to the Zoning Board of Appeals of the decision of the zoning enforcement officer or CT Page 13549 the Commission which was clearly acting as an enforcer of the zoning regulations", that argument completely fails because there was no decision of the ZEO and the Commission never gave anyone notice of its decision.
In the case of Loulis v. Parrott, 241 Conn. 180 (1997), our Supreme Court stated that
 "the right to appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue."
The court went on to say "Until the prospective appellant has either actual or constructive notice that a decision has been reached, the right of appeal is meaningless."
As far as the Commission's decision itself, this court does not have to give it any preference because the complainants were never given an opportunity to present their position.
Another claim of the defendant is that the plaintiff's claim of nuisance must fail because of Connecticut General Statutes § 19a-341. First, this court does not regard the plaintiff's claim as sounding in nuisance. No where in the complaint are the words "nuisance, unreasonable, or unlawful" ever used. Secondly, even if the court were to agree that a nuisance was claimed, § 19a-341 is inapplicable because in this case there is no evidence of the existence "of any general statute or municipal ordinance pertaining to nuisances to the contrary." Any fair reading of that statute demonstrates it has no application to the facts of this case.
The real crux of this case is whether the present commercial use of the defendant's premises is a permitted use. The nature of that use in earlier years is not at issue. The prior use may have started with the defendant processing only wood from his own property. He has now indicated that 80% of what he processes comes from off premises. So the issue is whether this present use is a farm use authorized by the regulations.
The court will begin with a review of the Easton Zoning Regulations. Section 4.1.2 specifies that farming, nursery CT Page 13550 gardening and truck gardening are permitted uses. Section 2.1.9 defines farm as "a tract of land containing five or more contiguous acres, the principal use of which is for agricultural purposes, including truck gardening and the raising and keeping of livestock, but excluding any facilities for the display, processing or sale of the products of the farm." It is quite clear from this definition alone that the 80 percent of the trees brought onto this property for processing were not "products of the farm."
Let us go on. Section 4.2 entitled "Permitted Accessory Uses" to farming at 4.2.3 permits "The incidental display, processing and sale of produce, nursery and greenhouse stock and/or other products of a farm, nursery garden or truck garden operated pursuant to Section 4.1.2 and Section 4.1.11 of the Regulationsraised on or in such farm [emphasis added] . . . by the operator thereof." Again the language appears clear that the concept of farm relates to products grown or raised on it.
Of particular interest is Section 4.2.3 D, which states:
 "As an accessory use to the operation of a farm or nursery garden on which Christmas trees are grown for sale to the public, the display and sale of Christmas trees not grown on the premises is permissible during a period of no more than thirty (30) days commencing no earlier than December 1, of any year, subject to the Commission's approval of a permit applied for in duplicate no later than November 1 of the same year. . . ."
That section makes it crystal clear that Christmas trees not grown on the premises may be added to Christmas trees grown on the premises for sale during December of each year upon approval of a permit from the Planning and Zoning Commission as an accessory use to a farm. That is the only exception in the regulations for trees or any other agricultural product being brought to the farm from off premises for display or sale or processing. It could not be clearer that what the defendant is doing to the extent of 80% of his raw materials is illegal and in violation of the regulations.
The defendant's reliance on the case of Reed v. Zoning Boardof Appeals, Town of Suffield, Superior Court, Judicial District of Hartford-New Britain at Hartford, docket no. CV97 0572091, CT Page 13551 March 3, 1997, Maloney, J., is misguided. The facts therein are totally distinguishable. In Reed, the plaintiff, who was conducting a farm use, brought tree stumps, topsoil, wood chips and bark mulch onto her 42 acre property from off premises to be ground up and added to her soil to enhance the volume and quantity of topsoil on the premises. These materials were processed and remained on the premises whereas in this case the logs are processed and sold to customers.
The defendant further argues that the approval of his application under Connecticut General Statutes § 12-107 to the Easton Assessor for a farm exemption for four acres of his property somehow makes his present use legal. One has nothing to do with the other. That approval has the effect of providing a lower rate of tax assessment for the farm use. It is of interest that 12-107c provides certain guidelines to the Assessor to determine if the property is in fact a farm use, one of which is the productivity of the land. Eighty percent of what the defendant processes is not even produced on his property.
It is also interesting to note that the letter to the defendant from the Assessor approving his exemption for the farm use (defendant's exhibit 7) stated in paragraph two, "I will however be reviewing the land every year to see that your trees are being used for farming and that they are being replaced with new ones as you go along." Any fair reading of that sentence simply means that the Assessor assumed that the wood being processed on the defendant's property came from his own trees, grown on his own property and she wanted to make sure that they were replaced. It is totally inconsistent with any knowledge or understanding that the defendant brought 80% of his materials in from off premises.
The court has discussed only that evidence which was presented at trial and has not given any attention to other exhibits that appear in any briefs submitted by the parties. Based on the facts, the regulations and the law, the court finds that the defendant's present commercial use of his property in the processing of wood for firewood and mulch as it relates to the 80 percent of his raw materials brought in from off premises is in violation of the Easton zoning regulations. In other words, it is in violation of those regulations to bring trees and logs onto the defendant's premises from outside sources, process them into firewood and mulch, store them on his property and later sell them. The defendant has never received any special permit, CT Page 13552 permission or variance for that operation. Obviously, he may process any wood grown on his premises for sale to customers.
The defendant has interposed two special defenses which the court will now discuss. The first special defense begins with the claim that the defendant's use of his property and the fact that he has purchased equipment for that use has been done in reliance upon acceptance or approval of that use by the Town of Easton. The Town is not a party to this action, and the plaintiff is not bound by any acquiescence by the Town. The second part of the defense is latches by the plaintiff in unnecessarily delaying bringing his claims in this case.
First, the plaintiff has testified that the use has intensified. Second, the plaintiff apparently did not complain as long as the use related to trees and timber grown on the premises. When it got to be that 80 percent of the total material used in the business was being hauled in from off premises, the plaintiff did bring this current action. The court finds under these circumstances that the defendant has not proven his defense of latches.
As to the second special defense involving Connecticut General Statutes § 19a-341, the court has already discussed that issue, and finds that § 19a-341 does not provide any defense to the activities being engaged in by the defendant.
Judgment will enter for the plaintiff against the defendant as to the first count.
The court will now discuss the damages claimed by the plaintiff. He was the only one who testified as to the effect upon him of both the noise and fumes generated by the defendant's activities.
As far as the noise is concerned, it is fair to conclude that the use of the defendant's heavy equipment for whatever the hours he worked would generate some noise. The problem with the plaintiff's claim is that it is not supported by any expert testimony as to decibel level or unreasonableness. That coupled with the fact that the plaintiff's home on his property is several hundred feet from the defendant's commercial activity convinces the court that the plaintiff has not presented enough evidence for the court to award money damages for the noise. CT Page 13553
The claim for money damages because of the fumes is even more tenuous. Again, no expert testimony was offered. Fumes, if any, were only a problem when the wind was blowing in the plaintiff's direction, and the court, again, although recognizing that the fumes may have caused some discomfort at certain times, does not have a sufficient factual basis to evaluate money dam ages, and therefore awards none for fumes.
As far as a diminution in property values, no evidence was presented on this subject at all. On the final subject of damages occasioned by emotional stress, lack of sleep and related health problems, again insufficient evidence was produced upon which to award any money damages.
As for the claim for permanent injunctive relief, judgment may enter for the plaintiff against the defendant, and the defendant is permanently enjoined at least until he obtains any permission, permit, special exception or variance from the proper zoning authority in the Town of Easton from bringing onto his property from off premises any trees, logs or any wood materials to be processed into firewood, mulch or any other wood product. To the extent that he is processing trees and other wood products grown on his property, that use is not in violation of the zoning regulations and the injunction does not extend to such use.
GORMLEY, J.