36 P.3d 1208

**SOUTHWEST SOIL REMEDIATION, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**CITY OF TUCSON, a municipal corporation; Walter Tellez, Zoning Administrator; Paul Swift, Acting Director, Development Services, as officials acting for the City of Tucson, Defendants/Appellees.**

**Southwest Soil Remediation, Inc., an Arizona corporation, Plaintiff/Appellant,**

v.

**City of Tucson, a municipal corporation; George Miller and Jane Doe Miller, husband and wife; Steve Leal and Jane Doe Leal, husband and wife; Jose J. Ibarra and Jane Doe Ibarra, husband and wife; Janet Marcus and John Doe Marcus, wife and husband; Michael J. Crawford; Shirley C. Scott and John Doe Scott, wife and husband; Molly E. McKasson and John Doe McKasson, wife and husband; Luis Gutierrez and Jane Doe Gutierrez, husband and wife; Bruce Wheeler and Jane Doe Wheeler, husband and wife; Michael W.L. McCrory and Jane Doe McCrory, husband and wife; Thomas J. Berning and Jane Doe Berning, husband and wife, Defendants/Appellees.**

No. 2 CA–CV 00–0219.

Court of Appeals of Arizona.

Dec. 20, 2001.

**440**

Stubbs & Schubart, P.C., by G. Lawrence Schubart and Damian M. Fellows, Tucson, for plaintiff/appellant.

Mesch, Clark & Rothschild, P.C., by Richard Davis and Jeanette M. Boulet, Tucson, for defendants/appellees.

## OPINION

HOWARD, Presiding Judge.

¶ 1 Appellant Southwest Soil Remediation, Inc., (SSR) appeals from the trial court's ruling on its supplemental special action complaint against appellees the City of Tucson and various city officials (collectively, the City), which alleged the City had improperly refused to issue a building permit for SSR's soil storage facility. After a bench trial, the trial court entered judgment in favor of the City, finding that, by not appealing the refusal to the Board of Adjustment, SSR had failed to exhaust its administrative remedies and to seek recourse from the agency with primary jurisdiction. Alternatively, the court found the City had not improperly denied the permit. Because we agree that SSR failed to follow the proper administrative review procedure, we affirm.

## BACKGROUND

■ ¶ 2 We view the facts in the light most favorable to sustaining the trial court's judgment. *Alliance Marana v. Groseclose,* 191 Ariz. 287, 288, 955 P.2d 43, 44 (App.1997). In October 1994, SSR, a business engaged in recycling petroleum-contaminated soil, notified the City of its intention to purchase an industrial lot within the City for a soil recycling plant and requested the City's assurances that the City's Zoning Code would allow operation of the plant. In response, the City's zoning administrator wrote SSR a letter, stating that the lot zoning "would be appropriate for the [recycling plant]" and expressing the opinion that the recycling plant was "not hazardous to the health, safety, and general welfare of the public." SSR purchased the lot.

¶ 3 In 1995, the City adopted a Land Use Code, effective July 1, 1995, to replace its Zoning Code. The City also adopted a Transition Ordinance, which provided that property owners could proceed with development under the Zoning Code for a limited time by filing a letter of intent with the City by October 1, 1995, filing a "completed site plan" by January 1, 1996, and obtaining "issued permits for the development" within one year of the letter of intent, but no later than October 1, 1996. The Transition Ordinance also allowed all "Board of Adjustment cases" filed prior to July 1, 1995, to proceed under the Zoning Code.

¶ 4 In June 1995, a business neighboring SSR's lot wished to appeal to the Board of Adjustment the zoning administrator's 1994 opinion that SSR's development was safe. However, because the deadline to appeal the opinion had passed, in keeping with customary practice, the zoning administrator reissued the opinion that SSR's operation was safe, thus enabling the neighboring business to appeal the decision to the Board in July 1995. Nonetheless, the Board of Adjustment upheld the zoning administrator's decision in August 1995.

¶ 5 Also in June 1995, SSR submitted the development plan for the recycling plant and on July 7, 1995, pursuant to the Transition Ordinance, submitted its letter of intent to proceed under the Zoning Code. A City zoning official responded to the letter of intent, informing SSR that development of the recycling plant could continue under the Zoning Code so long as SSR applied for its building permits by January 1, 1996, and secured the permits by July 7, 1996. The official also told SSR that, after these deadlines, the Land Use Code would apply.

¶ 6 In September 1995, the City approved SSR's development plan. Notwithstanding this approval and their earlier assurances, in October 1995, after a "study session" to address citizen concerns about SSR's proposed plant, the City's mayor and council voted to stop the "process, effort and program" of SSR's development.

¶ 7 In November 1995, SSR filed a special action in superior court requesting the court to order the City "to issue all requisite permits and to process all plans necessary for such approval." The City then passed a resolution stating that SSR could receive permits so long as it complied with "all legal requirements for issuing permits." In December 1995, SSR applied for grading, parking, utilities, and modular office permits. The City approved SSR's requested permits but did not issue them because SSR had not obtained air quality permits. SSR then moved for summary judgment.

¶ 8 After an order to show cause hearing and argument on the summary judgment motion, the trial court granted summary judgment in favor of SSR, but the City disputed SSR's proposed order, contending it was too broad. The parties thereafter agreed to a partial judgment, which was entered in June 1996, with both parties retaining the right to return to court for clarification or to appeal a final judgment. This partial judgment ordered the City "to issue all pertinent and necessary permits ... for [SSR] to proceed with the grading, installation of utilities, location of the modular office building, and the associated paving for sidewalks, curbing, and the parking lot." The City immediately issued the permits specified in the partial judgment.

¶ 9 However, SSR could not complete development of the recycling plant without obtaining a permit for its soil storage building. SSR could have applied for that permit at any time after its development plan was approved. And, under the City's interpretation of the Transition Ordinance, it was required to do so before January 1, 1996. But SSR and the City assumed that SSR was required to obtain an air quality permit from another agency before the City could actually issue a building permit for the soil storage facility. Although the air quality permit became effective on July 29, 1996, SSR did not submit an application for the storage facility building permit until September 1996. In October, the City's zoning administrator informed SSR that, because of its failure to meet the July 7, 1996, deadline, SSR had failed to satisfy the Transition Ordinance requirements. The zoning administrator also informed SSR that it could appeal the decision to the Board of Adjustment.

¶ 10 The City thereafter began processing SSR's application for the soil storage building permit under the Land Use Code rather than the Zoning Code. Although the plans for the storage facility satisfied building code criteria, according to the parties the facility was a conditional use under the Land Use Code rather than a permitted use and was thus subject to approval by the City's mayor and council. SSR did not pursue conditional use approval.

¶ 11 Rather than seeking administrative relief before the Board, SSR filed a new complaint in superior court in October 1996, this time alleging violations of 42 U.S.C. § 1983, civil conspiracy, interference with contract, and inverse temporary taking. The trial court then granted SSR leave to file a special action supplemental complaint, which alleged that the City's zoning administrator had improperly failed to consider SSR's storage facility building permit under the Zoning Code rather than the Land Use Code. The trial court consolidated SSR's special action with the § 1983 action. After a bench trial on the supplemental complaint issue in May 1999, the trial court entered judgment against SSR, finding that SSR had failed to exhaust its administrative remedies, that the Board of Adjustment had primary jurisdiction, and that SSR had not obtained any vested rights entitling it to issuance of the storage facility building permit under the Zoning Code. SSR now appeals the trial court's judgment.[1]

---

1. The judgment contained Rule 54(b), Ariz.R.Civ. P., 16 A.R.S., Pt. 2, language rendering it a final judgment. Other issues, such as damages, remain in the trial court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES/PRIMARY JURISDICTION

¶ 12 SSR argues that the trial court improperly found that SSR failed to follow the proper administrative review procedure. We defer to a trial court's factual findings, so long as they are supported by substantial evidence, but we review any issues of law de novo. *SAL Leasing, Inc. v. State ex rel. Napolitano*, 198 Ariz. 434, ¶ 13, 10 P.3d 1221, ¶ 13 (App.2000). A party must exhaust available administrative remedies "before appealing to the courts." *Minor v. Cochise County*, 125 Ariz. 170, 172, 608 P.2d 309, 311 (1980). Two closely allied doctrines are applied in such cases. *See Original Apartment Movers, Inc. v. Waddell*, 179 Ariz. 419, 420, 880 P.2d 639, 640 (App.1993). The doctrine of exhaustion of administrative remedies usually applies when a statute establishes an administrative review procedure and "determines *when* judicial review is available." *Id.* (emphasis in original); *see also Minor*, 125 Ariz. at 172, 608 P.2d at 311. "Where a board is specifically empowered to act by the Legislature, the board should act before recourse is had to the courts" as judicial review "is withheld until the administrative process has run its course." *Minor*, 125 Ariz. at 172, 608 P.2d at 311.

¶ 13 The primary jurisdiction doctrine, on the other hand, "determines *who* should initially determine a case." *Original Apartment Movers*, 179 Ariz. at 420, 880 P.2d at 641 (emphasis in original). If a case raises "'issues of fact not within the conventional experience of judges[,] ... agencies created by [the legislature] for regulating the subject matter should not be passed over,'" because administrative agencies exercise expertise and are more experienced in specialized areas. *Campbell v. Mountain States Tel. & Tel. Co.*, 120 Ariz. 426, 430, 586 P.2d 987, 991 (App.1978), *quoting Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576, 582 (1952); *see also* II

Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law Treatise* § 14.1, at 272 (3d ed.1994).

¶ 14 Both doctrines require a party to pursue available administrative remedies. *See Hamilton v. State*, 186 Ariz. 590, 593, 925 P.2d 731, 734 (App.1996); *Original Apartment Movers*. If a party fails to utilize the available administrative remedies, the courts decline to exercise jurisdiction.[2] *See Minor*, 125 Ariz. at 172, 608 P.2d at 311.

¶ 15 Under A.R.S. § 9–462.06(G)(1), a board of adjustment is directed to "[h]ear and decide all appeals in which it is alleged there is an error in an order, requirement or decision made by the zoning administrator in the enforcement of a zoning ordinance." Cities of a certain size can establish an additional level of administrative review in their legislative bodies. § 9–462.06(J). A person aggrieved by a board's or, if applicable, a legislative body's decision may file a special action complaint in superior court within thirty days of the board's or legislative body's decision. § 9–462.06(K). The issue of vested rights is also within a board of adjustment's authority. *Neal v. City of Kingman*, 169 Ariz. 133, 136, 817 P.2d 937, 940 (1991).

¶ 16 In its supplemental complaint, SSR attempted to overturn the decision of the City's zoning administrator to apply the Land Use Code rather than the Zoning Code to SSR's development. For such decisions, § 9–462.06 requires a party to appeal to the board before seeking review in superior court. Accordingly, SSR was required to follow the statutory administrative procedure prescribed by statute in order to exhaust its administrative remedies. *See Hamilton*. Furthermore, a board has specialized expertise, which makes it the appropriate forum to exercise primary jurisdiction. *See Original Apartment Movers; Campbell*. Because SSR did not appeal to the Board of Adjustment, the trial court properly declined to exercise jurisdiction over the controversy.[3]

---

**2.** The City notes that some cases found the exhaustion doctrine jurisdictional but also states that we need not decide that issue to uphold the trial court. We decline to decide whether the statutory administrative review scheme in § 9– 462.06 renders the exhaustion doctrine jurisdictional in this case.

**3.** At oral argument, SSR argued that appeal to the Board of Adjustment would have been futile.

## CONTINUING JURISDICTION

■ ¶ 17 In order to avoid the requirement of exhaustion of administrative remedies, SSR contends that the zoning administrator's decision to apply the Land Use Code could not "divest the Trial Court of jurisdiction over an action already raised in a pending action." At oral argument, SSR stressed that its first action was in the nature of a mandamus action that claimed the City had failed to perform a duty required by law, namely, to issue permits. Although SSR did request all permits necessary under its approved development plan in its original complaint, SSR had only applied for the grading, paving, utility, and modular building permits at the time of the original partial judgment, which does not mention the storage facility. In fact, in response to the trial judge's comment at the order to show cause hearing on the original complaint that SSR was not seeking an order concerning a permit for the storage facility, SSR stated that it was proceeding at its own peril and conceded that, until it acquired a permit for the storage facility, "[t]he only thing that [would] occur on that property [would be] an office facility." The City could not have had a duty to issue a permit for which SSR had not applied. Accordingly, the soil storage building permit, first requested in September 1996, could not have been the subject of the original action.

¶ 18 Further, although SSR claimed in the initial action that it had vested rights in the permits sought, the City had neither attempted to apply the Land Use Code to SSR's development at the time of the partial judgment nor refused to issue the soil storage building permit. The effect of the Land Use Code on any vested rights was not before the court. As a result, the application of the Land Use Code and the refusal to issue the permit could not have been the subject of the original action.

¶ 19 The filing of the supplemental complaint attempting to incorporate into the original action the new controversy over the zoning administrator's decision to apply the Land Use Code does not help SSR. A supplemental complaint sets forth "transactions or occurrences or events which have happened *since* the date of the pleading sought to be supplemented." Ariz.R.Civ.P. 15(d), 16 A.R.S., Pt. 1 (emphasis added). SSR's need to file a supplemental complaint serves to emphasize that the facts alleged in it concerning the Land Use Code deadlines, the application of the Land Use Code, and the City's refusal to issue the soil storage building permit under the Zoning Code all had not yet occurred when SSR filed its original complaint in November 1995.

¶ 20 Despite the fact that SSR had requested help from the superior court to obtain four initial permits, the application of the Land Use Code after SSR's failure to timely apply for and obtain a soil storage building permit was a new controversy, which SSR was required to appeal through the normal administrative course to exhaust the statutory administrative remedies, rather than pursuing the short cut of immediate superior court review. *See Minor.* Additionally, the Board of Adjustment has specialized expertise that requires it to exercise primary jurisdiction before any review may be pursued in the superior court. *See Campbell.* Because SSR failed to follow the appropriate administrative review procedures, the prerequisite for the trial court to exercise jurisdiction over this new controversy did not occur.

¶ 21 SSR cites *Loulis v. Parrott,* 241 Conn. 180, 695 A.2d 1040 (1997), for the proposition that the court "was not divested of jurisdiction over issues raised by SSR, but not resolved by the limited Order." In *Loulis,* the plaintiffs, nearby property owners, disputed a city zoning administrator's issuance of building permits to the defendants and initiated an action in superior court. Although both the trial court and appellate court found that the plaintiffs were statutorily required to appeal to the city's zoning board before seeking judicial review in superior court, the supreme court reversed, holding that the plaintiffs could, in fact, seek superior court review.

But, because it did not raise this argument in its briefs, we decline to address it. *See Ness v.*

*Western Sec. Life Ins. Co.,* 174 Ariz. 497, 502, 851 P.2d 122, 127 (App.1992).

¶ 22 The plaintiffs in *Loulis* did not receive notice of the issuance of the defendants' permits. Regarding this point, the court stated: "In the present case, the plaintiffs had no actual or constructive notice of the ... zoning certificate.... *For this reason alone,* the plaintiffs cannot be deemed to have failed to exhaust the administrative appellate process by which that issuance might have been challenged." *Id.* at 1047 (emphasis added). In the case before us, SSR does not claim it had no notice, and the zoning administrator's letter informing SSR that it had failed to comply with the Transition Ordinance fully apprised SSR of its right to appeal the administrator's decision to the Board of Adjustment.

¶ 23 Furthermore, *Loulis* involved a "third party," the plaintiffs, who sought review of a zoning official's decision affecting a party, the defendants. The court found this relationship militated against applying the exhaustion of administrative remedies doctrine to the plaintiffs. As the court stated:

> We see no sound reason to extend the exhaustion doctrine to this situation. It is one thing to require a party, who has the power to invoke or forgo the administrative process, to invoke it before resorting to the courts. It is quite another to require a third party to refrain from invoking his or her right to proceed to court simply because a party has an administrative process available to him or her, over which the third party has no control....

*Id.* at 1050. In the present case, SSR is not a third party, but rather, an applicant and a party in the zoning process. As a party, SSR actually invoked the administrative process by applying for a permit and was statutorily required to appeal to the Board. In light of these distinctions, SSR's reliance upon *Loulis* is misplaced.

¶ 24 SSR also cites other cases [4] that stand for the general proposition that jurisdiction of a controversy, once vested, may not be divested by subsequent events. But the issue here is whether the court should exercise jurisdiction over a subsequent controversy without allowing the Board to first exercise its jurisdiction. As we noted above, in the original complaint, SSR could not have raised the issue of its failure to comply with the Transition Ordinance and the zoning administrator's decision to apply the Land Use Code because those events had not yet occurred.

## VESTED RIGHTS

¶ 25 SSR argues it had vested rights in the development of the recycling center because it had expended money in reliance on the City's approval of its development plan and because the City had delayed its development of the property. But the Board of Adjustment has the authority to hear vested rights claims. *See Neal.* As a result, SSR was required to appeal the issue to the Board in order to exhaust its administrative remedies.

¶ 26 SSR relies on *Folsom Investments, Inc. v. City of Scottsdale,* 620 F.Supp. 1372 (D.Ariz.1985); *Robinson v. Lintz,* 101 Ariz. 448, 420 P.2d 923 (1966); and *Town of Paradise Valley v. Gulf Leisure Corp.,* 27 Ariz. App. 600, 557 P.2d 532 (1976), to support its claim that it had vested rights in the completion of the project. But none of these cases addressed the issue of vested rights in the face of the failure to exhaust administrative remedies. Nor has SSR argued that the Transition Ordinance could not have controlled the implementation or loss of any vested rights. *See City of Glendale v. Aldabbagh,* 189 Ariz. 140, 939 P.2d 418 (1997) (allowing city to provide for abandonment of vested rights). Further, the Board of Ad-

---

4. *F. Alderete General Contractors, Inc. v. United States,* 715 F.2d 1476 (Fed.Cir.1983); *Atlantic Corp. v. United States,* 311 F.2d 907 (1st Cir. 1962); *Daou v. Harris,* 139 Ariz. 353, 678 P.2d 934 (1984); *Schoenberger v. Board of Adjustment,* 124 Ariz. 528, 606 P.2d 18 (1980); *American Smelting & Refining Co. v. Arizona Air Pollution Control Hearing Bd.,* 113 Ariz. 243, 550 P.2d 621 (1976); *Whitfield Transp. v. Brooks,* 81 Ariz. 136,

302 P.2d 526 (1956); *Resolution Trust Corp. v. Foust,* 177 Ariz. 507, 869 P.2d 183 (App.1993); *Tempe Life Care Village, Inc. v. City of Tempe,* 148 Ariz. 264, 714 P.2d 434 (App.1985); *Bailey v. Mars,* 138 Conn. 593, 87 A.2d 388 (1952); *Berke v. Resolution Trust Corp.,* 483 N.W.2d 712 (Minn. App.1992); *Shinn v. Kreul,* 311 S.C. 94, 427 S.E.2d 695 (App.1993).

justment, which is familiar with the permit application and processing procedures, was in a better position to evaluate whether the City had improperly caused SSR to fail to timely apply for the soil storage building permit or to timely obtain the permit. *See Campbell.* Accordingly, these cases lend no support to SSR's position.

## TRANSITION ORDINANCE AND BOOK–CELLAR

■ ¶ 27 SSR also claims that, because it "always contested the application of the [Land Use Code] to its development[,] ... it was not required to follow the [Land Use Code] procedures for" review by the Board. But the deadlines that SSR failed to meet are established by the Transition Ordinance. And SSR does not dispute the validity or application of the Transition Ordinance, which provides that "[a]ny dispute or question regarding the interpretation or application of these transition rules shall be submitted to the Zoning Administrator as set forth in ... the Land Use Code ... and shall be appealable to the Board of Adjustment as set forth ... in the Land Use Code."

¶ 28 SSR argues that *Book–Cellar, Inc. v. City of Phoenix,* 150 Ariz. 42, 721 P.2d 1169 (App.1986), established that, "in an action in which it is contended that a new ordinance is inapplicable, a party is not required to seek administrative relief and thereby concede the applicability of the ordinance." But that case is distinguishable. In *Book–Cellar,* a business owner argued that it was not required to abide by a certain zoning ordinance, and the city had appealed the zoning administrator's original decision in the business owner's favor to the Board of Adjustment, which reversed and held in the city's favor. In a special action then filed by the business owner, the city contended that the business owner was first required to seek a waiver from the contested zoning ordinance before requesting judicial review before the superior court. This court held that the business owner was not required to seek a waiver because it was not seeking a waiver under the zoning ordinance but was arguing that

the business was not subject to the zoning ordinance at all. *Book–Cellar* is not helpful to SSR. There, the Board of Adjustment had ruled on the issue. Here, SSR failed to appeal to the Board of Adjustment.

## STIPULATION TO CONTINUING JURISDICTION

■ ¶ 29 SSR further argues the City agreed to the continuing jurisdiction of the court over SSR's request for all permits for completion of the development when it agreed that the court could enter a partial judgment ordering permits to be issued for grading, paving, utilities, and the modular building and agreed that either party could request a clarification of the partial judgment or appeal.[5] Although the trial court made no express finding that the agreement included all permits in any clarification, the court did find that "[t]he parties agreed that they could return to [the trial judge] for further clarification of" the partial judgment. We assume the trial court made any necessary supportive findings. *See Aguirre v. Robert Forrest, P.A.,* 186 Ariz. 393, 397, 923 P.2d 859, 863 (App.1996). Because the trial court made an express finding about the parties' agreement surrounding the partial judgment and ruled in the City's favor, it implicitly found, contrary to SSR's claim, that no agreement existed that the court retained continuing jurisdiction over SSR's request for all remaining permits. We defer to that finding if it is supported by substantial evidence. *See SAL Leasing.*

¶ 30 The City denies that it agreed SSR could return to court to contest any denial of a permit in the future. And, as SSR conceded before the trial court at the hearing on the original special action, it was then seeking an order for permits for grading, paving, utilities, and the modular building and had not yet applied for the soil storage building permit. As we found above, the application of the Land Use Code after SSR's failure to timely apply for a storage building permit was not in issue in the original action and a clarification of that order would not have

---

5. Parties to an action cannot stipulate to jurisdiction which a court does not otherwise have.

*Solomon v. Findley,* 165 Ariz. 45, 46, 796 P.2d 477, 478 (App.1990).

resolved that issue. Accordingly, substantial evidence supports the trial court's implicit finding that no agreement existed between the parties that the court would retain continuing jurisdiction over SSR's request for all permits.

## WAIVER

¶ 31 SSR next argues that the City waived the issue of exhaustion of remedies by failing to raise it in its opposition to SSR's motion to file a supplemental complaint and that the trial court's order allowing it to file a special action supplemental complaint resolved the issue of the court's jurisdiction. But SSR has not cited any authority for the proposition that a failure to object to the filing of a supplemental complaint waives any defense to the merits of the claim. And the procedural issue involved in allowing the filing of a supplemental complaint is different from any substantive issues presented by the supplemental complaint. A trial court has "broad discretion in allowing a supplemental pleading." Ariz.R.Civ.P. 15(d), State Bar Committee Note to 1963 Amendment. In the analogous context of ruling on a motion to amend a complaint, a trial court does not decide the merits or facts of a controversy.[6] *Hernandez v. Maricopa County Superior Court,* 108 Ariz. 422, 501 P.2d 6 (1972). We believe the same rule should apply to supplemental pleadings. Therefore, the City did not waive the exhaustion issue and the trial court did not rule on it in simply allowing the supplemental complaint to be filed.

¶ 32 SSR also claims that the City waived the affirmative defense of SSR's failure to exhaust remedies because the City failed to raise the issue in its answer to SSR's supplemental complaint. But the City did raise the issue in its answer to SSR's § 1983 complaint, which was filed before the supplemental complaint and which was consolidated with the special action; in its summary judgment motion on SSR's supplemental complaint; and in its list of material issues of law in the joint pretrial statement for the supplemental special action. Therefore, SSR was

not surprised or prejudiced by the City's failure to raise the issue in its answer to the supplemental complaint itself. *See Sirek v. Fairfield Snowbowl, Inc.,* 166 Ariz. 183, 186, 800 P.2d 1291, 1294 (App.1990) (a court may properly allow a defendant to raise an affirmative defense omitted from answer as long as plaintiff is not surprised or prejudiced by the defense). Accordingly, we cannot find the City waived this defense. Additionally, even if the City had waived this defense, "[a] court can decide sua sponte the question of whether or not to exercise jurisdiction." *Avila v. Chamberlain,* 119 Ariz. 369, 372, 580 P.2d 1223, 1226 (App.1978).

## RULE 15 AND OTHER ISSUES

¶ 33 SSR also cites Rule 15(c), Ariz. R.Civ.P., for the proposition that amendments that relate to the conduct, transaction, or occurrence in an original complaint relate back to the date of the original pleading. First, SSR did not file an amendment under Rule 15(a) relating back as allowed by Rule 15(c), but filed a supplemental complaint pursuant to Rule 15(d). Second, the supplemental complaint pertained to a distinct issue, the zoning administrator's decision to apply the Land Use Code. It did not relate to the original conduct involving the grading, paving, utilities, and modular building permits.

¶ 34 Because we have determined that the trial court properly decided that SSR failed to exhaust its administrative remedies before the Board of Adjustment and that that body had primary jurisdiction, we need not consider SSR's further argument that the Land Use Code did not apply to SSR because it had a pending Board of Adjustment case, which dealt with sidewalk and parking variances. SSR was required to make that argument to the Board of Adjustment. Further, we need not reach SSR's claim that the trial court erred in finding that the City had properly processed the soil storage building permit.

## CONCLUSION

¶ 35 SSR recognized the applicability of the City's administrative process by applying

---

6.   But it is within the court's discretion to reject a futile amendment. *See Hall v. Romero,* 141 Ariz.

120, 124, 685 P.2d 757, 761 (App.1984).

for the soil storage building permit in September 1996. SSR does not claim it had the right to simply apply to the court for the soil storage building permit. It obviously was aware that it was required to demonstrate compliance with the building code requirements and the appropriate zoning requirements. Its assertion that it had the right to immediate superior court review of the zoning administrator's decision is unsupported by the law. Moreover, any such right would frustrate the doctrines of exhaustion of administrative remedies and primary jurisdiction. The appropriate administrative agency is better suited and more experienced to originally determine whether the detailed requirements of building codes have been met, whether zoning mandates have been complied with, and whether permits should issue. Then, after appropriate administrative review, the courts can review the administrative rulings. Because SSR failed to exhaust its administrative remedies and recognize the primary jurisdiction of the Board, we affirm the trial court's judgment.

ESPINOSA, Chief Judge, and BRAMMER, Judge concurring.