NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

THE TOWN OF FLORENCE, a political subdivision of the State of Arizona;
SWVP-GTIS MR, LLC, a Delaware limited liability company; PULTE HOME
CORPORATION, a Michigan corporation, *Plaintiffs/Appellants*,

*v.*

ARIZONA DEPARTMENT OF ENVIRONMENTAL QUALITY, an agency of the
State of Arizona; HENRY DARWIN, in his official capacity as Director of the
Arizona Department of Environmental Quality, *Defendants/Appellees*,

CURIS RESOURCES (ARIZONA), INC., a Nevada Corporation,
*Intervenor/Appellee*.

No. 1 CA-CV 13-0476
FILED 12-30-2014

Appeal from the Superior Court in Maricopa County
No. CV2012-014309
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Florence Town Attorney, Florence
By James E. Mannato
*Counsel for Plaintiff/Appellant Florence*

Jennings, Haug & Cunningham, LLP, Phoenix
By Larry J. Crown, Ronnie P. Hawks, Christopher R. Stovall, Janis L. Bladine, and Russell R. Yurk
*Counsel for Plaintiff/Appellant SWVP-GTIS MR*

Pulte Home Corporation, Scottsdale
By D. Christopher Ward
*Counsel for Plaintiff/Appellant Pulte Home*

Arizona Attorney General's Office, Phoenix
By John T. Hestand
*Counsel for Defendants/Appellees ADEQ/Darwin*

Osborn Maledon, P.A., Phoenix
By Colin F. Campbell, Thomas L. Hudson, and Shane Ham
*Co-Counsel for Defendant/Intervenor/Appellee Curis Resources*

Gallagher & Kennedy, P.A., Phoenix
By D. Lee Decker, Bradley J. Glass
*Co-Counsel for Defendant/Intervenor/Appellee Curis Resources*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Michael J. Brown joined.

---

**S W A N N**, Judge:

¶1 The Arizona Department of Environmental Quality ("ADEQ") issued an administrative regulation authorizing it to accept and approve applications for a temporary individual aquifer protection permit. Plaintiffs challenged the regulation in the superior court, contending that administrative authorization of temporary permits exceeded the authority granted ADEQ by the relevant statutes. On a motion to dismiss, the trial court determined that no statute prohibited the issuance of temporary permits, and that ADEQ was entitled to

2

deference in its interpretation of the statutory scheme enabling it to issue the regulation. We affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        ADEQ issued Arizona Administrative Code ("A.A.C.") R18-9-A210 ("A210") via final administrative rulemaking procedures. A210 permits ADEQ to issue a temporary individual aquifer protection permit ("APP") to an applicant for up to two years. The temporary APP allows ADEQ to regulate activities, such as mining, that may impact aquifer water quality by authorizing an applicant to operate a pilot project. The intent of the regulation is that the pilot project produce data necessary for an applicant to apply for a full-scale project and permanent APP. *See* A.A.C. R18-9-A210(A)(1).

**¶3**        For the past two years, Curis Resources Arizona ("Curis") has been attempting to build a permanent in-situ-leaching copper mine in the Florence area. In-situ-leach mining will require an acidic substance to be injected into the ground near an aquifer that supplies drinking water to Florence residents. Plaintiffs are concerned that the aquifer will become contaminated by the mining process, posing a threat to public health. The proposed mine site is also surrounded by planned residential communities and Plaintiffs are concerned that operation of the mine will cause the value of these properties to decrease.

**¶4**        Curis applied for a temporary APP to establish a pilot project, which would yield the information necessary for it to obtain approval for a permanent APP.[1] ADEQ approved the application and issued a temporary APP pursuant to A210.

**¶5**        Plaintiffs commenced an action seeking an injunction to prevent Curis from developing a pilot project pursuant to the temporary APP. In their complaint, Plaintiffs alleged that ADEQ exceeded its statutory rulemaking authority when it issued A210, and that ADEQ improperly issued that specific permit to Curis. Meanwhile, Plaintiffs also pursued an administrative appeal before the Water Quality Appeals Board, asserting the same as-applied challenge they made in their complaint—that ADEQ unlawfully issued the permit to Curis.

---

[1]        Curis began its efforts to operate a copper mine in Florence by attempting to amend the Town of Florence's General Plan to allow mining on privately held land. The Town Council rejected that effort. Curis also sought a permanent APP from ADEQ to allow commercial operation of the mine, but an ADEQ review revealed several shortcomings with the proposed plan. Curis is now attempting to build a pilot project to yield the information necessary to respond to ADEQ's concerns with its initial proposed plan.

Curis intervened in the civil action and filed a motion to dismiss, which the court granted. The court dismissed the entire complaint, and declined to address the as-applied challenge due to the then-pending administrative appeal. The court held that ADEQ had the authority to issue the regulation, agreeing with Curis and ADEQ that "A.R.S. § 49-230(A)(4) cannot be read in isolation as constituting an 'Enabling Act' for the entire statutory scheme that authorized the APP program." The trial court also found that to the extent the statutory scheme was less than clear, ADEQ's interpretation was entitled to deference. It further noted that "ADEQ addressed this very issue and listed the authority relied on during [A210] rulemaking, in particular A.R.S. § 49-242(A). The legislature has amended § 49-242 three times since then without disturbing [A210], leading to the presumption that ADEQ's interpretation is correct." Plaintiffs appeal.

**STANDARD OF REVIEW**

**¶6**　　　　We review the dismissal of a complaint under Arizona Rule of Civil Procedure 12(b)(6) *de novo*. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7, 284 P.3d 863, 866 (2012).

**DISCUSSION**

I.　　PLAINTIFFS DID NOT PRESENT A COGNIZABLE CAUSE OF ACTION.

　　A.　Facial Challenge

**¶7**　　　　Plaintiffs contend that Arizona Revised Statutes ("A.R.S.") section 49-203(A)(4) constitutes an "Enabling Act" for the entire scheme authorizing the APP program. The statute provides that "[t]he director shall . . . [a]dopt, by rule, an aquifer protection permit program . . . . The permit program shall be as prescribed by article 3 of this chapter." A.R.S. § 49-203(A)(4) (2014). Plaintiffs assert that this language mandates that temporary APPs be subject to the same statutory requirements in Article 3 as permanent APPs. The argument is logical as far as it goes, but Plaintiffs fail to identify any specific manner in which the temporary APPs actually conflict with Article 3. Rather, they make sweeping generalizations regarding ADEQ's use of A210 as a tool to exceed its authority and circumvent Article 3's requirements.

**¶8**　　　　"A party attacking the validity of an administrative regulation has a heavy burden. On review, this court will test an administrative regulation by the same standards that apply to a statute and will indulge all rational presumptions in favor of the validity of the administrative action." *Watahomigie v. Ariz. Bd. of Water Quality Appeals*, 181 Ariz. 20, 24-25, 887 P.2d 550, 554-55 (App. 1994) (citations omitted).

4

**¶9** Under Article 3, "[t]he director shall prescribe by rule requirements for issuing, denying, suspending or modifying individual permits, including requirements for . . . permit applications and . . . shall prescribe conditions and requirements for individual permits." A.R.S. § 49-242(A). Temporary APPs and permanent APPs are both individual permits, and nothing in Article 3 prevents the director from issuing both types. By delegating to the director the broad authority to define the substantive APP requirements, we take the legislature to have intended to allow the director flexibility to approve APPs in stages.

**¶10** The trial court reasoned that A.R.S. § 49-203(A)(4) cannot be read in isolation as constituting a limiting "enabling act" because there are other statutory schemes that authorize the program. *See, e.g.,* A.R.S. § 49-104(A)(1) ("The department shall . . . [f]ormulate policies, plans and programs to implement this title to protect the environment."); *id.* § 49-203(A)(5) ("The director shall . . . [a]dopt, by rule, the permit program for underground injection control described in the safe drinking water act."). And Plaintiffs acknowledged that "compliance with all of Article 3 for issuing an individual APP is impossible as Article 3 encompasses statutes that have no bearing on individual APPs." Therefore, the trial court held that "[t]o the extent that the statutory scheme is less than clear . . . ADEQ's interpretation of its authority to establish rules for issuing individual APPs is entitled to deference." We agree. "In circumstances like these, in which the legislature has not spoken definitively to the issue at hand, 'considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer.'" *Ariz. Water Co. v. Ariz. Dep't of Water Res.*, 208 Ariz. 147, 154, ¶ 30, 91 P.3d 990, 997 (2004) (quoting *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984).

**¶11** The legislature has amended A.R.S. § 49-242(A) three times since ADEQ issued A210 in 2001. None of these amendments affected A210, and we presume that had the regulation exceeded ADEQ's statutory authority, the legislature would have clarified the statute to address the issue. *See Yavapai-Apache Nation v. Fabritz-Whitney*, 227 Ariz. 499, 505-06, ¶ 30, 260 P.3d 299, 305-06 (App. 2011) (because the legislature had amended provisions of a statutory scheme and the language of a certain section remained consistent, the court inferred that the agency's interpretation of that section was correct). And although administrative interpretation of statutes is not binding on the court, the court will accept an administrative body's interpretation when there is "[a]cquiescence in meaning over long periods of time" so long as the interpretation is not "manifestly erroneous." *See Long v. Dick*, 87 Ariz. 25, 29, 347 P.2d 581, 584 (1959); *Ariz. Water Co.*, 208 Ariz. at 154-55, ¶ 30, 91 P.3d at 997-98. For these reasons, we hold that A210 constitutes a valid exercise of ADEQ's rulemaking authority.

**¶12**          The only colorable facial challenge Plaintiffs assert is that ADEQ violates A.R.S § 49-208 by holding the period for public comment after a temporary APP has already been issued.  *See* A.A.C. R18-9-A210(D)(1).  Plaintiffs argue that because the public comment period does not occur until after a temporary APP has been issued, there cannot be meaningful public participation in the matter.  But A.R.S. § 49-208(A) provides that "[t]he director, by rule, shall prescribe procedures to assure adequate public participation in proceedings of the department under this chapter."  To that end, A210 provides that the director may amend or revoke the approved APP after consideration of the public comments.  *See* A.A.C. R18-9-A210(D)(3).  And by its terms, the permit only becomes effective upon completion of the public participation requirements.  Taken together, we conclude that these procedures and safeguards assure adequate public participation under the statute.

### B.          As-applied Challenges

**¶13**          In their complaint, Plaintiffs alleged that ADEQ had not "made the findings required by [A.R.S.] § 49-251(A), concerning the 'temporary APP' issued to Curis."    Plaintiffs contend on appeal that ADEQ "promulgated and administered" A210 in a manner that violated state law.  They also argue that A210 is invalid as interpreted and applied by ADEQ, in part because it contravenes a set of mining guidelines used to protect groundwater supplies called "BADCT."  These arguments are separate from and not relevant to the facial challenge Plaintiffs assert, and therefore were not properly presented to the trial court.  Such claims are properly brought through the administrative review process, not in an action for declaratory judgment.[2]  The trial court properly dismissed Plaintiffs' complaint because Plaintiffs failed to pursue available administrative remedies regarding these as-applied challenges before seeking judicial review.

**¶14**          "The doctrine of exhaustion of administrative remedies usually applies when a statute establishes an administrative review procedure and 'determines *when* judicial review is available.'"  *Sw. Soil Remediation, Inc. v. City of Tucson*, 201 Ariz. 438, 442, ¶ 12, 36 P.3d 1208, 1212 (App. 2001) (quoting *Original Apartment Movers, Inc. v. Waddell*, 179 Ariz. 419, 420, 880 P.2d 639, 640 (App. 1993)).  "'Where a board is specifically empowered to act by the Legislature, the board should act before recourse is had to the courts as judicial review is withheld until the administrative process has run its course."  *Sw. Soil Remediation, Inc.*, 201 Ariz. at 442, ¶ 12, 36 P.3d at 1212 (quotation omitted).

---

[2]      Plaintiffs were involved in an administrative hearing at the Water Quality Appeals Board that lasted over 30 days where they raised every as-applied challenge.  The Board ultimately issued a 155-page decision on the matter and addressed each issue.

**¶15** Similarly, "[t]he primary jurisdiction doctrine . . . determines *who* should initially determine a case." *Id.* at 442, ¶ 13, 36 P.3d at 1212 (quotation omitted). And "[i]f a case raises issues of fact not within the conventional experience of judges[,] . . . agencies created by [the legislature] for regulating the subject matter should not be passed over, because administrative agencies exercise expertise and are more experienced in specialized areas." *Id.* (quotation omitted). Both of these doctrines require a party to pursue available administrative remedies before seeking judicial review. *Id.* at 442, ¶ 14, 36 P.3d at 1212.

**¶16** In 1986, the legislature enacted Title 49 of the Arizona Revised Statutes, which created ADEQ as part of the Environmental Quality Act. Title 49, Chapter 2, Article 7 established the Water Quality Appeals Board to hear appeals

> from any grant, denial, modification or revocation of *any individual permit* issued under this chapter, from any issuance, denial or revocation of a determination pursuant to § 49-241, subsections B and C . . . by any person who is adversely affected by the action . . . and who has exercised any right to comment on the action . . . .

A.R.S. § 49-323(A) (emphasis added). The legislature specifically designated the Water Quality Appeals Board as the appropriate body to hear appeals of all issues relating to the grant of an individual permit issued under Chapter 2—including all APPs.

**¶17** Under the related doctrines of exhaustion of administrative remedies and primary jurisdiction, the courts are required to withhold judicial review until the administrative process has run its course. Additionally, the statute itself provides that only "[f]inal decisions of the board are subject to appeal to superior court." A.R.S. § 49-323(B); *see also Watahomigie*, 181 Ariz. at 23, 887 P.2d at 553 ("Once ADEQ made its decision to issue the [aquifer protection] permit . . . any person adversely affected by that decision had a right to appeal the issuance of such permit to the [Water Quality Appeals] Board."). Because Plaintiffs had an opportunity to litigate their claim in the proper forum and had not exhausted their administrative remedies before the Board, the superior court properly declined to consider these as-applied challenges.

II.     THE COURT DID NOT CONSIDER MATTERS OUTSIDE THE PLEADINGS.

**¶18** Plaintiffs contend that "[f]or the court to have considered anything other than the factual allegations of the complaint was error." Plaintiffs allege that the court improperly ventured beyond the pleadings when it noted in its ruling that ADEQ "listed the authority relied on during [A210] rulemaking, in particular A.R.S. § 49-242(A)." They further contend that the court considered matters

outside the complaint when it reasoned that ADEQ's interpretation "was [not] absurd or contrary to the statutory scheme it seeks to effectuate."

¶19 "A complaint's exhibits, or *public records regarding matters referenced in a complaint*, are not 'outside the pleading,' and courts may consider such documents without converting a Rule 12(b)(6) motion into a summary judgment motion." *Coleman*, 230 Ariz. at 356, ¶ 9, 284 P.3d at 867 (emphasis added). In their complaint, Plaintiffs alleged that "[t]he legislative record does not include any testimony or other materials contemplating the ability of ADEQ to issue a temporary APP. . . . The language of the statute and the legislative history do not support the use of a 'temporary individual permit.'" Because Plaintiffs repeatedly referenced the plain language and legislative history of A.R.S. §§ 49-241 to -252, we cannot find fault with the court's decision to review those authorities in deciding the motion to dismiss.

III.   THE COURT PROPERLY ASSUMED THE TRUTH OF THE FACTUAL ALLEGATIONS.

¶20 Plaintiffs finally argue that the trial court erred by not assuming the truth of factual allegations in the complaint. The only example Plaintiffs give of a factual allegation that the trial court did not accept as true is their allegation that A210 was "invalid as interpreted and applied by ADEQ." This "factual allegation" is a mere legal conclusion, much like the allegations that ADEQ issued the permit "without and contrary to statutory authority through an unauthorized process"; "[A210] is invalid because it . . . actually violates the limits on ADEQ's statutory authority to regulate this area"; and "[t]he rule contained in [A210] aggressively expands the unlawful purposes for which an unauthorized 'temporary APP' can be issued" to include a purpose "far beyond the scope and authority of [A.R.S. § 49-251]."

¶21 "In considering the propriety of [a] motion to dismiss . . . we assume plaintiffs' allegations are true." *Chamberlain v. Mathis*, 151 Ariz. 551, 554, 729 P.2d 905, 908 (1986). "Although we assume plaintiff's well-pled factual allegations are true, 'mere conclusory statements are insufficient.'" *Rogers v. Bd. of Regents of Univ. of Ariz.*, 233 Ariz. 262, 269, ¶ 27, 311 P.3d 1075, 1082 (App. 2013) (quoting *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, ¶ 7, 189 P.3d 344, 346 (2008)). "[W]e do not accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts." *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4, 121 P.3d 1256, 1259 (App. 2005). Therefore, to the extent possible, the trial court assumed the truth of the factual allegations in the complaint.

IV.     THE FACTUAL RECORD WAS SUFFICIENT.

**¶22**          The only issue properly before the trial court was whether ADEQ exceeded its statutory authority in promulgating A210.  This is purely a question of law.  The trial court's consideration of the complaint, the law, and the statute itself was sufficient context to determine that ADEQ acted within its statutory grant of authority when issuing A210.  No additional factual record was required for the court to make this determination.

**CONCLUSION**

**¶23**          For the reasons set forth above, we affirm.

